**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE HEITING,<br>Plaintiff,<br><br>-against-<br><br>KORANGY PUBLISHING INC.,<br><br>Defendant. | Index No: 1:25-cv-10176-MKV<br><br>**DEFENDANT KORANGY PUBLISHING INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** |

Gillian Vernick
David S. Korzenik
MILLER KORZENIK RAYMAN LLP
The Paramount Building
1501 Broadway, Suite 2015
New York, NY 10036
212-752-9200

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1
STATEMENT OF FACTS ..... 2
LEGAL STANDARD ..... 3
I. THE COMPLAINT MUST BE DISMISSED BECAUSE HEITING LACKS ARTICLE III STANDING. ..... 3
A. Heiting Alleges Only an Unparticularized and Overly Speculative Bare Procedural Violation. ..... 4
B. Heiting's Allegations of Harm Have No Close Common-Law Analogue. 6
i. Unjust enrichment bears no relation to revelation of HTTP Requests. ..... 7
ii. Collecting an HTTP Request is not akin to intrusion upon seclusion. ..... 8
iii. Heiting's HTTP Request is not private and has not been publicized. ..... 9
C. Heiting's Alleged Injuries Are Not Fairly Traceable to TRD. ..... 10
i. Heiting's alleged injuries are from independent third parties not before this Court. ..... 11
D. Plaintiffs' Allegations of Injury Are Not Redressable. ..... 13
II. THE COMPLAINT FAILS TO STATE A CLAIM UNDER CIPA § 638.51. ..... 14
A. CIPA § 638.51 Applies to "Telephone Lines," Not Digital Data Collection. ..... 15
i. Statute's plain language shows it applies to "telephone lines." ..... 16
ii. Statute's legislative history shows it does not apply to internet data. ..... 17
B. Even if § 638.51 Applied, Web Analytics Are Not a "Trap and Trace Device." ..... 19
i. TRD's browser data cannot and does not "identify" Heiting. ..... 19
ii. Aggregate "Profiles" of Data from Pre-existing Sources are "Stored Content" Which Fall Outside of Statute. ..... 21
iii. TRD collects the contents of a browser's communication with a website, which cannot be collected by a "Trap and Trace Device." ..... 22
C. Heiting is a Serial Litigant and Willing Internet User Who Consensually Visited TRD's Website to Manufacture a Claim. ..... 23
III. Heiting's Failure to State a Claim Dooms Entire Class. ..... 25
CONCLUSION ..... 25

# TABLE OF AUTHORITIES

## CASES

*Allen v. Wright*,
468 U.S. 737 (1984) .......... 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*Bautz v. ARS Nat'l Servs., Inc.*,
226 F. Supp. 3d 131 (E.D.N.Y. 2016) .......... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016) .......... 7, 8

*Bradsbery v. Vicar Operating, Inc.*,
110 Cal. App. 5th 899 (Cal. Ct. App. 2025) .......... 17

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004) .......... 7

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......... 8, 9

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Sup. Sept. 9, 2024) .......... 15, 16, 20, 24

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .......... 14

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 5, 10

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .......... 14

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 19

*Duke v. Luxottica U.S. Holds. Corp.*,
167 F.4th 16 (2d Cir. 2026) .......... 13, 14

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938) .......... 15, 17

*Gambles v. Sterling Infosystems, Inc.*,
234 F. Supp. 3d 510 (S.D.N.Y. 2017) .......... 4, 5, 6, 7

*Giammatteo v. Newton*,
452 F. App'x 24 (2d Cir. 2011) ............................................................................ 3

*Guthrie v. Rainbow Fencing Inc.*
, 113 F.4th 300 (2d Cir. 2024) ............................................................................ 6

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025)................................................ 16

*In re Apple Data Priv. Litig.*,
No. 5:22-CV-07069-EJD, 2026 WL 146025 (N.D. Cal. Jan. 20, 2026).......................... 16

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ............................................................................ 7

*In re Shulman Transport Enters., Inc.*,
744 F.2d 293 (2d Cir. 1984)........................................................................ 11, 12

*J.M. v. Huntington Beach Union High Sch. Dist.*,
2 Cal. 5th 648 (2017) ............................................................................ 18

*Kishnani v. Royal Caribbean*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025).................... 20, 22

*Kyung Sup Ahn v. Rooney, Pace Inc.*,
624 F. Supp. 368 (S.D.N.Y. 1985)............................................................................ 12

*Lakin v. Watkins Associated Indus*.,
6 Cal. 4th 644 (Cal Sup. 1993) ............................................................................ 16

*Licea v. Hickory Farms LLC*,
No. 23-ST-CV-26148, 2024 WL 1698147 (Cal.Super. Mar. 13, 2024).................... 17, 24

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................ 4, 5, 10, 13

*Lurenz v. Coca-Cola Co.*,
No. 22-CV-10941, 2025 WL 2773188, (S.D.N.Y. Sept. 29, 2025)................................ 10

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ............................................................................ 18

*Maddox v. Bank of New York Mellon Tr. Co., N.A.*,
19 F.4th 58 (2d Cir. 2021) ............................................................................ 4

*Martin v. Bottom Line Concepts*,
723 F. Supp. 3d 270 (2024 S.D.N.Y.)........................................................................ 10, 11

*McMorris v. Carlos Lopez & Assocs., LLC*,
995 F.3d 295 (2d Cir. 2021)............................................................................ 5

*Medicaid Consumers for Continuity of Care v. McDonald*,
No. 1:25-CV-00565, 2025 WL 1224189 (S.D.N.Y. Apr. 24, 2025) ..................... 4, 10, 11

*Mills v. Saks.com LLC,*
No. 23-cv-10638 (ER), 2025 WL 34828 ................................................................ 8

*Mitchener v. CuriosityStream, Inc*.,
No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) ..... 22, 23, 25

*Moose Lodge No. 107 v. Irvis*,
407 U.S. 163 (1972)............................................................................................ 14

*Murthy v. Missouri*,
144 S. Ct. 1972 (2024) ........................................................................................ 13

*Nat'l Union Fire Ins. v. Seneca Fam. of Agencies*,
255 F. Supp. 3d 480 (S.D.N.Y. 2017)................................................................. 15

*People v. Franco*,
6 Cal. 5th 433 (Sup. Ct. 2018) ........................................................................... 16

*Reddington v. Staten Island University Hospital*,
511 F.3d 126 (2d Cir. 2007)................................................................................ 15

*Reiss v. Societe Centrale du Groupe des Assur. Nat.*,
246 F. Supp. 2d 273 (S.D.N.Y. 2003)................................................................. 11

*Rodriguez v. Ink America Int'l Group LLC*,
No. 25STCV15350 (Cal. Super. Ct., Los Angeles Cnty. Dec. 10, 2025)................ passim

*Salazar v. Nat'l Basketball Ass'n,*
118 F.4th 533, (2d Cir. 2024). ......................................................................... 8, 9

*Saleem v. Corp. Trans. Grp., Ltd*.,
854 F.3d 131 (2d Cir. 2017)................................................................................ 12

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................................ 20

*Salveson v. JP Morgan Chase & Co*.,
166 F. Supp. 3d 242 (E.D.N.Y. 2016) ................................................................ 17

*Sanchez v. Cars. com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) .......................... 15, 16

*Sanchez v. Clipper Realty, Inc.,*
No. 21 CIV. 8502, 2026 WL 496555 (S.D.N.Y. Feb. 23, 2026) ...................................... 5

*Simon v. E. Ky. Welfare Rights Ord.,*
426 U.S. 26 (1976)............................................................................... 10, 11, 13

*Solomon v. Flipps Media, Inc.*,
136 F.4th 4 (2d Cir.) .......... 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).......... 3, 4, 5, 7

*Sputz v. Alltran Financial,*
No. 7:2021cv04663, 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021).......... 9

*St. Pierre v. Dyer,*
208 F.3d 394 (2d Cir. 2000).......... 10

*Steel Co. v. Citizens,*
523 U.S. 83 (1998).......... 13

*Strubel v. Comenity Bank,*
842 F.3d 181 (2d Cir. 2016).......... 5

*Tandon v. Cap't Cove Marina of Bridgeport, Inc.,*
752 F.3d 239 (2d Cir. 2014).......... 11

*Tartaglione v. Shaw's Exp., Inc.,*
790 F. Supp. 438 (S.D.N.Y. 1992).......... 11

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021).......... 4, 5, 6, 7

*Travelers Ins. Co. v. 633 Third Assocs.*,
14 F.3d 114 (2d Cir. 1994).......... 15

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 24

*Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.,*
147 F.4th 73 (2d Cir. 2025). .......... 12

*Warden v. Kahn*,
99 Cal. App. 3d 805 (Ct. App. 1979).......... 18, 19

*Whalen v. Michaels Stores, Inc.,*
689 F. App'x 89 (2d Cir. 2017) .......... 5, 6

*Xu v. Reuters News & Media Inc.*,
No. 24 CIV. 2466, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) .......... 3, 4, 5, 6

**STATUTES**

CA Consumer Privacy Act.......... 18

Cal. Court R. 8.1115(a) .......... 15

Cal. Penal Code § 637.2 .......... 14

Cal. Penal Code § 638.50(c) .......... 16

Cal. Penal Code § 638.51 .......... passim

Fed. R. Civ. P. 54(d)(2)(A)–(B) .......... 14

S.D.N.Y. Civ. R. 54.1(c)(7) .......... 14

**OTHER AUTHORITIES**

Cal. SB 690 .......... 18

## PRELIMINARY STATEMENT

Plaintiff Anne Heiting and her attorneys Tauler Smith have been filing a "rash" of lawsuits just like this in California, misusing the California Invasion of Privacy Act (CIPA) § 658.51 to shakedown settlements out of unsuspecting websites operating basic data analytics, a normal function of many websites. Now, they have begun asserting claims in other state courts, hoping for better results after California state courts saw through these manufactured claims. This Court should as well.

*First,* Heiting lacks Article III standing. She alleges that Defendant Korangy Publishing, publisher of The Real Deal ("TRD"), harmed her by collecting information that she necessarily provided to visit a website, an expected function of the internet. Heiting asks this Court to infer harm never properly alleged. Her "injury" is at most a bare statutory violation that is speculative, unparticularized, and untethered from concrete harm traceable to TRD. Significantly, Heiting deliberately self-inflicted any "harm" as a willing website visitor. Her conclusory allegation that TRD may be a principal or employer of third party data brokers is not plausibly pled.

*Second*, even if Heiting could allege standing, she has failed to state a claim. The statute's legislative history and plain language indicate that it does not apply to internet data collection. Heiting has not plausibly pled that TRD has identified her from anonymized browsing data. No aggregated data could identify Heiting because the statute does not apply to stored data. Furthermore, Heiting alleges that TRD, through third parties, is somehow able to discern *what she is doing* when she visits a website, which is categorically not a "trap and trace device."

Because Heiting lacks standing and fails to state a claim, her class action allegations fail. Her Complaint must be dismissed without leave to amend, as no amendment could cure the lack of standing, and without standing, no merits amendment can be entertained.

## STATEMENT OF FACTS

Defendant Korangy Publishing publishes *The Real Deal* ("TRD"), covering news on commercial and residential real estate in major U.S. cities. Compl. ¶ 7. According to the Complaint, TRD utilizes digital analytics companies Comscore Inc. ("Comscore") and Quantcast Corporation ("Quantcast") to obtain visitor browsing metrics. Compl. ¶¶ 21-28. Specifically, Heiting alleges Comscore gathers IP addresses, pages visited, visit time, and browser type. Compl. ¶ 23-25. Heiting alleges Comscore adds this collected browser data to a pre-existing profile based on a browser's URLs visited, titles of pages, visit times, and IP address of that device, based on information from other websites. *Id*. Heiting alleges Comscore aggregates information to create "a unique ID tied to [the] device[.]" Compl. ¶ 25-26.

Additionally, Heiting alleges that Quantcast collects the device's browser type (Safari, Internet Explorer, etc.), user agent (Safari on iPhone, MacBook, etc.), cookie ID, referrer URL (website device came from), search terms from referrer website, URL of webpage, and visit date and time. Compl. ¶ 27. Heiting claims that Quantcast places a cookie that assigns an ID number when a device visits TRD's website. Compl. ¶ 27. Heiting alleges TRD utilizes the data from Quantcast to recognize that a browser is the same one that visited TRD's website before. Compl. ¶ 27. The Complaint claims that Quantcast uses this device data to "infer a visitor's frequency (in terms of visits [to a website]), interests and demographics." Compl. ¶ 27.

Heiting alleges that she visited TRD's website on March 11, 2025. Compl. ¶ 30. When she visited TRD's website, third parties allegedly collected her device and browsing information. Compl. ¶ 30. She alleges "on information and belief" that this information was "added " to a pre-existing "profile" of Heiting. Compl. ¶ 32.

## LEGAL STANDARD

TRD moves to dismiss Heiting's Complaint under both Rules 12(b)(1) and (b)(6). On a Rule 12(b)(1) motion for lack of subject matter jurisdiction, Heiting has the burden of proving "by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011). For 12(b)(1), a district court "may refer to and rely on competent evidence outside of the pleadings." *Id*. To survive a motion under 12(b)(6), "the pleadings must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Giammatteo*, 452 F. App'x at 27 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, (2007)). A court will accept a complaint's well-pleaded facts as true, but "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'…nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

### I. THE COMPLAINT MUST BE DISMISSED BECAUSE HEITING LACKS ARTICLE III STANDING.

"Article III standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Xu v. Reuters News & Media Inc*., No. 24 CIV. 2466, 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025) (dismissing CIPA claim for lack of standing). To establish this, a plaintiff bears the burden of establishing they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The Complaint fails to meet even one element of this "irreducible constitutional minimum." *Id.*

*First*, Heiting's core allegation against TRD—the collection of the information necessarily contained in *her* HTTP Request—is not an injury-in-fact. It is a bare procedural

violation without concrete injury. *See Spokeo,* 578 U.S. at 331. This does not confer standing. *Second*, the Complaint does not show Article III injury from speculative harms attributable to data brokers generally. These allegations against ***data brokers***, who themselves cannot identify Heiting, are neither particularized nor actual or imminent. *Third*, Heiting caused her sole alleged injury, thereby breaking the "causal chain." *See Medicaid Consumers for Continuity of Care v. McDonald*, No. 1:25-CV-00565, 2025 WL 1224189, at *10 (S.D.N.Y. Apr. 24, 2025). Heiting accessed the TRD website knowing that it would receive data. Further, Plaintiff and her counsel are regular CIPA litigants who visited TRD's website to manufacture litigation. Heiting's allegation that TRD is in a scheme or has an agency or employment relationship with data brokers is unsupported. Compl. ¶ 9. Ultimately, there is no redress for basic internet functions or hypothetical harms as to TRD. If fairly pled at all, they are only so pled toward non-parties.

### A. Heiting Alleges Only an Unparticularized and Overly Speculative Bare Procedural Violation.

"An allegation of "bare procedural violation[s], divorced from any concrete harm ... does not suffice for Article III standing." *See Xu*, 2025 WL 488501, at *3 (citing *TransUnion LLC v. Ramirez,* 594 U.S. 413, 440 (2021)). In the Second Circuit, the only relevant issue is whether the plaintiff suffered a "concrete harm," regardless of a procedural violation. *Maddox v. Bank of New York Mellon,* 19 F.4th 58, 64 (2d Cir. 2021) (citing *Transunion,* 594 U.S. at 413).

An injury-in-fact must be both concrete and particularized. *Spokeo,* 578 U.S., at 333. Particularization demands that the alleged injury affect the plaintiff in a "personal or individualized way." *Gambles v. Sterling Infosystems, Inc.,* 234 F. Supp. 3d 510, 518 (S.D.N.Y. 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). This must be a "grievance" distinct from the "body politic." *Bautz v. ARS Nat'l Servs., Inc.,* 226 F. Supp. 3d 131, 147 (E.D.N.Y. 2016) (citing cases). A suit cannot be a "vehicle for the vindication of the

value interests of the public at large." *Strubel v. Comenity Bank,* 842 F.3d 181, 191 (2d Cir. 2016) (cleaned up).

A harm must be, at a minimum, imminent. *Lujan,* 504 U.S. at 560. *See also Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 410 (2013) (injury must be "certainly impending"). "Conclusory allegations" or "draw[ing] unwarranted inferences" do not support imminence. *Gambles,* 234 F. Supp. 3d., at 516. In relation to data specifically, standing cannot be premised on a "highly attenuated chain of possibilities[.]" *See Whalen v. Michaels Stores, Inc.,* 689 F. App'x 89, 90 (2d Cir. 2017) (citing *Clapper,* 568 U.S. at 410). *See also McMorris v. Carlos Lopez & Assocs., LLC,* 995 F.3d 295, 299 (2d Cir. 2021) ("since Plaintiffs failed to allege a substantial risk of identity theft or that such harm was certainly impending, they could not establish standing by… a speculative fear of future identity theft").

Heiting alleges, at most, a "bare procedural violation" of § 638.51. *See Spokeo,* 578 U.S. at 342. *See also TransUnion,* 594 U.S. at 440 ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."); *Xu* 2025 WL 488501, at *2 (no injury for § 638.51 claim where plaintiff did not allege actual receipt of ad from tracking). Accordingly, even if TRD had violated § 638.51 (it did not), Heiting must show a distinct injury to have standing. She fails to do that.

Further, Heiting's allegations are not remotely particularized. Under her logic, **every** California internet user visiting websites with basic analytics would have a cause of action. Compl. ¶ 9. This does not demonstrate how the alleged injury could affect Heiting, or any class member, in a "personal or individualized way." *Gambles,* 234 F. Supp. 3d, at 518. Similarly, her conjectural list of potential harms inherently lacks particularization. *See Sanchez v. Clipper Realty, Inc.,* No. 21 CIV. 8502, 2026 WL 496555, at *20 (S.D.N.Y. Feb. 23, 2026) (citing

*Guthrie v. Rainbow Fencing Inc.,* 113 F.4th 300 (2d Cir. 2024)) ("potential harms that *could* result" from conduct lack standing). Heiting's notation of current events or abstract capabilities of data brokers generally demonstrates that she seeks to litigate a grievance of the "body politic." Compl. ¶ 34-35.

"[S]tyling" her suit as a class action "adds nothing to the question of standing." *See Gambles,* 234 F. Supp. 3d., at 518 ("A plaintiff therefore may not rely on the fact that he or she has styled his case as a class action, because this adds nothing to the question of standing.") (internal quotation marks omitted). Heiting posits a "highly attenuated chain of possibilities" to allege an imminent injury. *See Whalen,* 689 F. App'x 89, at 90. Under her theory, TRD would have to transmit her browsing information to Data Brokers *and* compel them to track her IP address across hundreds of other websites until they could cross-reference this information to the level necessary to accrue personally identifying information, *and then* share it with TRD or another third party. This speculative chain of events has no appreciable risk.

Moreover, Heiting did not show that the supposed class here—an unidentified cohort of potentially "thousands"—even knows or believes they have each been injured. Compl. ¶ 16. As the Supreme Court noted in *TransUnion,* "[i]t is difficult to see how a risk of future harm could supply the basis for a plaintiff 's standing when the plaintiff did not even know that there was a risk of future harm." 594 U.S., at 428. Plaintiff fails to allege a particularized, imminent injury.

**B. Heiting's Allegations of Harm Have No Close Common-Law Analogue.**

This District has already found that collection or disclosure of an IP address (identifies device geolocation, network and host), and basic technical information appurtenant thereto (device type, browser type, etc.) (collectively an "HTTP Request") is not an injury that can confer Article III standing. *See Gabrielli,* 2025 WL 522515, at *6-14 (holding, on parallel facts,

that § 638.51 bears no relationship to common-law unjust enrichment, intrusion upon seclusion, or public disclosure of private facts)*; Xu*, 2025 WL 488501, at *5-7 (finding no common law analogues on similar facts). Beyond concreteness, Heiting also must show that her alleged injury has a "close relationship" with harm that is a "traditional" basis for suit. *Spokeo,* 578 U.S. at 341. *See also TransUnion,* 594 U.S. at 417. An allegation of intangible harm must also have a "close historical or common law analogue." *Id*. at 423. Heiting has not directly alleged close common-law analogues to her allegations. Instead, she impermissibly asks the Court to "draw unwarranted inferences" from "conjectural allegations" causally removed from the singular allegation that TRD collected the information in her HTTP Request. *See Gambles,* 234 F.Supp.3d., at 516.

**i. Unjust enrichment bears no relation to revelation of HTTP Requests.**

Plaintiff alleges that Defendant's actions were "unlawful[]" and for "commercial gain." Compl. ¶ 9. The elements of unjust enrichment are "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain" enrichment. *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,* 373 F.3d 296, 306 (2d Cir. 2004). The Ninth Circuit has found standing under an unjust enrichment theory where Facebook profited from "sensitive and valuable" information plaintiff retained a stake in. *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 599–601 (9th Cir. 2020). Similarly, this District upheld a finding of facts "similar" to unjust enrichment where the plaintiff paid for a subscription, and the defendant subsequently sold their personal information, reducing the value of the subscription. *Boelter v. Hearst Commc'ns, Inc.,* 192 F. Supp. 3d 427, 436 (S.D.N.Y. 2016). *See also Gabrielli,* 2025 WL 522515, at *6–7 (applying these cases to § 638.51).

Heiting has not alleged anything to support any element of unjust enrichment. Heiting's only allegation directly against TRD is that its website collected the data in her HTTP Request—

as all websites do—and cookies to correlate this (singular) request. Compl. ¶ 11 ("The Website, ***like most other websites*** … can determine the approximate geolocation … of … ***visitor requests*** to visit the website") (emphasis added). This is not a form of "protected" or "sensitive and valuable" information that one can be unjustly enriched by. *Id.* Heiting does not describe any gains TRD has achieved or any losses she has incurred. Nor does she allege that she paid TRD to retain a stake in any hypothetical profit. *See Boelter,* 192 F. Supp. 3d., at 455 ("[b]ecause [plaintiffs] paid for their subscriptions … disclosure of [identifying] information deprived Plaintiffs ... of the full value of their subscriptions.") (cleaned up).

**ii. Collecting an HTTP Request is not akin to intrusion upon seclusion.**

Heiting states "tracking initiated by [data brokers]… interferes with the seclusion of individuals." Compl. ¶ 33. Intrusion upon seclusion occurs with (1) an "intentional invasion upon the solitude or seclusion of another or his private affairs[.]" that (2) "would be highly offensive to a reasonable person." *Caro v. Weintraub,* 618 F.3d 94, 100 (2d Cir. 2010) (citing cases). This tort does not require the publication or use of the information. *Id.* It targets intrusions that a reasonable person would find "deeply private, personal, and confidential." *Mills v. Saks.com LLC,* No. 23-cv-10638, 2025 WL 34828, at *4 (S.D.N.Y. Jan. 6, 2025). Courts have found intrusion upon seclusion analogous only in the collection of web data that includes personal information, like a Facebook ID. *See Salazar v. Nat'l Basketball Ass'n,* 118 F.4th 533, 538–42 (2d Cir. 2024), cert. denied*,* 146 S. Ct. 880 (2025). *See also Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir.), cert. denied, 146 S. Ct. 885 (2025) (neither an IP address nor a "cookie file" constitutes "identifiable information") (citing cases).

The information incidental to an HTTP Request is not information a reasonable person would find "deeply private, personal, and confidential" if "intruded" upon. *Gabrielli,* 2025 WL

522515, at *6. It is the type of information one could glean from sitting next to someone at a coffee shop—they're browsing on a MacBook, using Safari, from a specific zipcode. Heiting has no grounds to suggest that TRD intentionally intruded by collecting this information. An HTTP Request is essential for visiting a website, and it is the *user* who initiates and facilitates this dialogue. Compl. ¶ 30 ("Plaintiff visited the Website…when Plaintiff did so, their [] information was sent[.]"). Furthermore, Heiting pleads with certainty of TRD's alleged "installation and use of data broker software," Compl. ¶2, and only says she "was never informed of" data collection "for mercantile purposes." *Id*. ¶40. This suggests Heiting did not perceive her IP address as generally "private," as no "reasonable person" could. *See Caro,* 618 F.3d. at 100.

**iii. Heiting's HTTP Request is not private and has not been publicized.**

Finally, Heiting alleges TRD inhibited her interest in "control[ling] [her] own personal information." Compl. ¶ 33. The tort of public disclosure of private facts occurs when a party "give[s] publicity to a matter concerning the private life of another" in a way that is "highly offensive" and devoid of the "public interest." *Salazar,* 118 F.4th at 541.

This argument fails for the same reason. An HTTP Request does not contain "personal information," and thus does not concern "private life." *See supra* Sect. I.b.ii. Its disclosure is not "reasonably offensive" nor against the "public interest." *Salazar,* 118 F.4th at 541. Moreover, Heiting's agency/employment theory fails on the requisite publicity. Compl., ¶ 9. She alleges TRD shared her IP address with data brokers as employees or agents, not outsiders. More puzzling, the Complaint asserts: "Data Brokers operate in secret and without public disclosure of their operations." Compl. ¶ 41. A defendant who shares private information with one of its vendors has not "publicized" the information. *Sputz v. Alltran Financial,* No. 7:2021cv04663, 2021 WL 5772033, at *9 (S.D.N.Y. Dec. 5, 2021). Instead, publication must be to "so many

persons that the matter must be certain to become one of public knowledge." *Id.,* at *7. The disclosure of Heiting's HTTP Request to a data broker, whether as a vendor or an agency /employment theory, is not the public disclosure of private or personal information. Most websites are operated by the owners via third-party vendors and service providers. Such collaboration is not publication.

**C. Heiting's Alleged Injuries Are Not Fairly Traceable to TRD.**

An alleged injury must be "fairly traceable to a defendant's unlawful conduct." *Lujan,* 504 U.S., at 560–61. It cannot rely on "speculation about the decisions of independent actors[.]" *Clapper,* 568 U.S., at 414. In short, an injury cannot result from "the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Ord.,* 426 U.S. 26, 41 (1976). *See also Martin v. Bottom Line Concepts,* 723 F. Supp. 3d 270, 279 (S.D.N.Y. 2024) (alleged injury cannot be "too far removed" from challenged action). Moreover, a plaintiff "cannot create standing through a self-inflicted harm which breaks the causal chain." *Medicaid*, 2025 WL 1224189, at *10 . *See also Lurenz v. Coca-Cola Co.*, No. 22-CV-10941, 2025 WL 2773188, Order (S.D.N.Y. Sept. 29, 2025) (no standing for plaintiff who self-inflicts injury solely to manufacture standing); *St. Pierre v. Dyer,* 208 F.3d 394, 401 (2d Cir. 2000) (same).

The only allegation of injury Heiting directly attributes to TRD, rather than to data brokers, is the collection of information in the HTTP Request. This is demonstrably not capable of producing an injury-in-fact. The remainder of her allegations are nothing more than speculation on the harms of data brokers generally; "the independent action[s] of third parties not before the court[.]" *Simon,* 426 U.S. at 41 (cleaned up). Even if Heiting's allegations were not entirely speculative and devoid of concreteness, she is precisely at fault for these so-called

injuries. Heiting and her counsel are frequent litigants of this fact pattern.[1] Their strategy is simple: (1) Heiting visits websites they deem exploitable, knowing browsing data will be received by the website; and (2) counsel demands a settlement payment and/or files suit. What necessarily precedes this is the act of locating—whether through counsel or a third party at their direction—websites to exploit. Heiting entered TRD's website *knowing* its format and *wanting* the outcome she erroneously claims is injurious; a "self-inflicted harm which breaks the causal chain." *See Medicaid,* 2025 WL 1224189, at *10.

**i. Heiting's alleged injuries are from independent third parties not before this Court.**

Article III does not allow a court to act when the alleged injury "results from the independent action of some third party not before the court." *See Simon,* 426 U.S. at 41. Heiting does not allege her injuries occurred from TRD's actions. Instead, the injuries only occur if data brokers contracted with "hundreds" of other websites to build a "user profile" with enough demographic and behavioral indicia to identify her, and then actually did so. Compl. ¶ 13. This is "too far removed" from TRD. *Martin,* 723 F. Supp. 3d. at 279.

To evade this traceability issue, Heiting alleges TRD is part of a "scheme" to identify her with multiple data brokers. Compl. ¶ 9. She further alleges that TRD is the principal or employer of said Data Brokers. *Id.* While this incorrect allegation is an issue of fact, this court has the "power and obligation" to determine this factual dispute under this Rule 12(b)(1) motion. *Tandon v. Cap't Cove Marina of Bridgeport, Inc.,* 752 F.3d 239, 243 (2d Cir. 2014). *See also Reiss v. Societe Centrale du Groupe des Assur. Nat.,* 246 F. Supp. 2d 273, 277 (S.D.N.Y. 2003).

Heiting's agency theory is conclusory and not plausibly pled. It is "well settled" that control is paramount to an agency or employment relationship. *Tartaglione v. Shaw's Exp., Inc.,*

[1] *See supra* notes 4-5 (Heiting and her counsel have filed 20+ suits alleging a violation of CIPA with the same facts).

790 F. Supp. 438, 441 (S.D.N.Y. 1992). Where the record is "devoid of evidence" showing control, there can be no agency. *Id.* (quotations omitted). *See also In re Shulman Transport Enters., Inc.,* 744 F.2d 293, 295 (2d Cir. 1984) ("absent this critical element of control…[one] cannot be said to have acted as [an] agent"). An agent must also have express or implied authority based on the "principal's manifestations to the agent" to complete "acts necessary or incidental to achieving the *principal's objectives*." *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez,* 147 F.4th 73, 90 (2d Cir. 2025) (emphasis added). Alternatively, an agent may have apparent authority where the principal's words or conduct "give[s] rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Id.* Heiting pleads nothing indicating that an agency or employment relationship exists.

*First,* there is no record evidencing control—the "critical" element. *In re Shulman,* 744 F.2d. at 295. Heiting's allegation that a data broker would provide these services to hundreds of other websites evidences the opposite—that Defendant is *independent* from any data brokers, as said data brokers must primarily "draw income through work from others." *Saleem v. Corp. Trans. Grp., Ltd*., 854 F.3d 131, 141 (2d Cir. 2017) (ability to work for others indicates lack of control and weighs against employment relationship). *See also Kyung Sup Ahn v. Rooney, Pace Inc.,* 624 F. Supp. 368, 370-71 (S.D.N.Y. 1985) (no agency if "no evidence" parties were more than "independent entities").

*Secondly,* Heiting concedes data brokers' objectives have nothing to do with TRD. For an agency relationship to exist, an agent's actions must be "necessary or incidental to achieving the principal's objectives." *Vista,* 147 F.4th, at 90. Heiting characterizes the data broker's objectives as "monetizing data by selling and licensing it to other entities, like law enforcement and government agencies." Compl. ¶ 32. It is implausible that TRD, a news outlet, authorized data

brokers to collect Plaintiff's IP activity across hundreds of random websites. *Finally*, Heiting does not suggest TRD's actions could "give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Id.* The Complaint alleges "Defendant…use[d] data broker software on its website…without [plaintiff's] consent." Compl. ¶ 2. For apparent authority to exist, ***TRD's*** "words or conduct" must have given Heiting some basis to believe that data brokers had authority to collect her data. *Id*. Heiting pleads she was not "made aware of…this tracking and identification." Compl. ¶ 29. If she had no notice, Heiting cannot plausibly plead an apparent authority theory. Heiting's allegations are self-defeating.

### D. Plaintiffs' Allegations of Injury Are Not Redressable.

The Court can only redress injuries fairly traceable to TRD's actions. *Simon,* 426 U.S. at 96. The Court must consider whether Heiting plausibly pleads that TRD's action "caused [her] injury and that a judgment preventing or requiring the action will redress it." *Lujan,* 504 U.S. at 561-62. The only (speculative) injury Heiting could sustain is from a data broker, not TRD. Heiting's requested relief, Compl. ¶13, is both "foreclosed by prior decisions" and an "implausible" request for relief. *Duke v. Luxottica U.S. Holds. Corp.,* 167 F.4th 16, 26 (2d Cir. 2026) (citing *Steel Co. v. Citizens,* 523 U.S. 83, 89 (1998)). Should Heiting visit TRD's website again, another HTTP Request would necessarily be transmitted. Requested relief cannot "redress or prevent actual or imminently threatened injury." *Murthy v. Missouri*, 603 U.S. 43, 56 (2024).

Moreover, when injury depends on how a "third party not before the court" will respond, redressability is speculative. *Id*. Here, TRD is incapable of acting to cause any of Heiting's hypothetical injuries. From what has been pled, even if TRD deleted Heiting's browsing data, her alleged identification occurs by "adding" data from "hundreds of websites." Compl. ¶13. The pleading does not indicate that deleting data from just TRD's website would "redress or prevent

actual or imminently threatened injury" because of the unknown "identifiable" data set from "hundreds" of unknown websites. *Id*. Her alleged injuries depend on actions of a "third party not before the court." *See Simon,* 426 U.S. at 41.

Heiting also seeks statutory damages under CIPA. Compl. ¶13. CIPA limits damages to persons who have "been injured by a violation of this chapter" in actions "against **the person** who committed the violation." § 637.2. Putting aside that Heiting has not been injured, TRD is incapable of causing the supposed injuries. Relief is "foreclosed." *Duke*, 167 F.4th, at 26.

Finally, Plaintiff seeks "reasonable attorney's fees and costs" for her frivolous action. Compl. ¶13. Sec. 637.2 does not provide for attorney's fees, nor does a contract between the parties provide as such. Therefore, the American Rule applies and attorneys' fees cannot be awarded. *Chambers v. NASCO*, *Inc.,* 501 U.S. 32, 33 (1991). Furthermore, Heiting's request is improper and untimely under F.R.C.P. 54(d)(2)(A)-(B) and S.D.N.Y. Civ. R. 54.1(c)(7).

The filing of a class action suit does not relax the standing requirement. *Allen v. Wright,* 468 U.S. 737, 750 (1984). *Every* class member, including Heiting, must have standing. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). Heiting has no standing to "redress for injuries" incurred by the class she "purport[s] to represent." *See e.g. Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972). Since Heiting lacks standing, the class lacks standing.

## II. THE COMPLAINT FAILS TO STATE A CLAIM UNDER CIPA § 638.51.

Even if the Court considered the Complaint's merits, it fails to state a claim. *First*, numerous California state courts have concluded § 638.51 does not apply to internet data. *Second*, even if it did apply, Heiting fails to plead the alleged data is "reasonably likely to identify" her. In addition, Heiting alleges data is collected about ***what*** she is doing browsing,

which a "trap and trace device" cannot collect. *Finally*, Heiting is a willing internet user and serial plaintiff who consented to collection of data necessary to run a website.

### A. CIPA § 638.51 Applies to "Telephone Lines," Not Digital Data Collection.

The *Erie* doctrine requires New York federal courts apply California substantive law as interpreted by the highest court in California. *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938)). If the highest state court has not ruled, a court "must carefully predict how the highest court of the forum state" would rule. *Id*. In this, "no deference" is owed to a federal "district court's interpretation" of state law. *See Reddington v. Staten Island Univ.*, 511 F.3d 126, 133 (2d Cir. 2007).

While the California Supreme Court has not weighed in on whether § 638.51 applies to digital data collection, multiple California state courts found that it does not based on plain language and legislative history. *See Sanchez v. Cars. com Inc.*, No. 24STCV13201, 2025 WL 487194, at * 3 (Cal. Super. Jan. 27, 2025) (dismissing § 638.51 claim of "IP address collecting software [] by a website to improve its user functionality and...marketing" because "legislative history of the CIPA suggests" it applies to "devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications"); *Casillas v. Transitions Optical, Inc*., No. 23STCV30742, 2024 WL 4873370, at *3 (Cal. Super. Sept. 9, 2024) ("Section 638.50 does not address the privacy rights of Internet users."); *Rodriguez v. Ink America Int'l Group LLC*, No. 25STCV15350, at 6 (Cal. Super. Dec. 10, 2025) (dismissing CIPA claim on pleadings as "CIPA's provisions do not concern the analytics tools employed" online).[2]

---

[2] While Cal. Court R. 8.1115(a) does not permit citation to unpublished opinions, here because "there is no other binding authority on which to rely, federal courts may consider unpublished California opinions as persuasive authority." *Nat'l Union Fire Ins. v. Seneca Fam. of Agencies*, 255 F. Supp. 3d 480, 487 (S.D.N.Y. 2017).

### i. Statute's plain language shows it applies to "telephone lines."

A "trap and trace device" is "any device of process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." § 638.50(c). Sec. 638.51 requires "a person…first obtain[] a court order" before "install[ling] or us[ing] a trap and trace device." § 638.51(a). The order "***shall specify***…[t]he number and, if known, physical location of the ***telephone line*** to which the…trap and trace device is to be attached[.]" § 638.52(d)(3).

As California courts have acknowledged, "[e]xtending Section 638.51 to internet communications would render this [telephone] provision 'nugatory.'" *In re Apple Data Priv. Litig*., No. 5:22-CV-07069-EJD, 2026 WL 146025, at *3 (N.D. Cal. Jan. 20, 2026) (citing *Sanchez*, 2025 WL 487194, at *3; *Casillas*, 2024 WL 4873370, at *2). Reading § 638.51 as Heiting purports "renders [] nugatory" the warrant's "telephone line" requirement and "must [be] avoided." *See Lakin v. Watkins Associated Indus*., 6 Cal. 4th 644, 659 (Cal Sup. 1993) ("each sentence must be read not in isolation but in light of the statutory scheme…interpretation that renders related provisions nugatory must be avoided"). This misapplication must be further avoided because it "violates the rule that '[c]ourts should give meaning to every word of a statute if possible[.]" *People v. Franco*, 6 Cal. 5th 433, 437 (Sup. Ct. 2018). *See also Gutierrez v. Converse Inc*., No. 24-4797, 2025 WL 1895315, at *2 (9th Cir. July 9, 2025) (dismissing CIPA wiretapping claim because "phrase 'any telegraph or telephone wire, line, cable, or instrument'" did not "contemplate an online chat message sent on a smartphone").

While some California federal cases have decided differently, they cannot be squared with statutory language and intent. California state courts have declined to follow those mistaken

federal cases. *See Sanchez*, 2025 WL 487194, at *4 ("Both parties rely on several federal cases…[t]he Court is not persuaded by those authorities and therefore finds that Plaintiff fails to state a cause of action under Penal Code section 638.51."); *Rodriguez*, No. 25STCV15350, at 3 (finding statute "does not clearly apply to the web functions" while recognizing federal courts have reached "divergent conclusions about the scope of Cal. Penal Code section 638.51").

Under *Erie*, this Court must predict how the California Supreme Court would rule. California trial court decisions are actual applications of California law by California courts. *Salveson v. JP Morgan Chase & Co*., 166 F. Supp. 3d 242, 256 (E.D.N.Y. 2016), *aff'd*, 663 F. App'x 71 (2d Cir. 2016) (predicting high court ruling under *Erie* requires "giving proper regard to relevant rulings of the state's lower courts."). They are better evidence of California law application than federal decisions, which are owed "no deference." *Reddington*, 511 F.3d at 133.

**ii. Statute's legislative history shows it does not apply to internet data.**

While most of CIPA was enacted in the 1960s, § 638.51 was added in 2015. *See* § 638.51 (added by Stats. 2015, Ch. 204, Sec. 2. (AB 929), effective January 1, 2016.) CIPA has since been amended twice, in 2016 and 2022, at a time when "websites have used the software at issue here." *Rodriguez*, No. 25STCV15350, at 6. Yet CIPA's "[l]egislative updates and commentary continue to ***explicitly cover cordless and cellular phone technology*** without reference to internet based communications." *See Licea v. Hickory Farms LLC*, No. 23-ST-CV-26148, 2024 WL 1698147, at *2 (Cal.Super. Mar. 13, 2024) (dismissing online "fingerprinting" as §638.51 claim).

"When the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." *Bradsbery v. Vicar Operating, Inc.*, 110 Cal. App. 5th 899, 910 (Cal. Ct. App. 2025). More specifically, "the Legislature has expressly referenced 'internet' or 'online' communications and services when extending protections

beyond traditional telephonic technologies" when it added Cal. Penal Code § 632.01 in 2017. *Rodriguez*, 25STCV15350, at 5 (citing § 632.01 prohibiting confidential health communications on "Internet Web sites and social media"). "The absence of any comparable reference to website communications in Penal Code § 638 indicates a deliberate choice not to sweep ordinary website analytics within CIPA's pen register and trap and trace provisions." *Id*.

Notably, California comprehensively regulated data privacy five years after § 638.51 with CA Consumer Privacy Act (CCPA). The CCPA doesn't prohibit data collection or require a court order or express consent. As such, Heiting's "expansive reading of CIPA, criminalizing web-based analytical tools, would seemingly render CCPA void." *Rodriguez*, 25STCV15350, at 5. Specifically, if web analytics fell under § 638.51, "using them without a court order would violate CIPA." *Id*. However, "CCPA presumes that such tools will be employed so long as the proper procedures, such as notice, opt-out and deletion are followed." *Id*.

Reading both § 638.51 and CCPA as two laws regulating data differently within five years of each other renders one "superfluous," which California state courts do not tolerate. *See J.M. v. Huntington Beach Union High Sch. Dist.,* 2 Cal. 5th 648, 654 (2017) ("The Legislature would not have created [] specific but superfluous provision[s]."). The only reasonable interpretation is that CIPA § 638.51 regulates *telephone* privacy, not digital data.

The California State Assembly is working to stop misuse of § 638.51. It has introduced SB 690, with language clarifying that general business use of data collection, like TRD, is exempt from the statute. *See* Cal. SB 690 Crimes: invasion of privacy (2025-2026). Given this clear legislative intent, Heiting's misuse of the statute should stop here in dismissal. At minimum, it should be stayed until the state assembly considers SB 690 this year, as scheduled.

CIPA is part of the California Penal Code. As such, any "ambiguous" language "should

be interpreted in favor of the alleged violator." *Warden v. Kahn*, 99 Cal. App. 3d 805, 812, n. 3 (Ct. App. 1979). *See also LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) ("rule of lenity," applicable in civil context, "requires court to limit the reach of criminal statutes to the clear import of their text"). "The penal code requires that interpretation of its provisions include only those offenses that come clearly within the import of the language and will not be given application beyond their plain intent." *Rodriguez*, 25STCV15350, at 3.

Even if the Court found ambiguity in § 638.51, this should be interpreted in favor of the "alleged violator" TRD. *See Warden*, 99 Cal. App. 3d at 812. Until the high court or legislature weighs in, "courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation." *Doe v. Eating Recovery Ctr.*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025) ("Courts are supposed to narrowly construe civil statutes that impose punitive civil penalties.").

**B. Even if § 638.51 Applied, Web Analytics Are Not a "Trap and Trace Device."**

A "trap and trace device" must be "reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." § 638.50(c). Heiting alleges TRD collects "contents of [the] communication" between her browser and a website. *See id*. In addition, TRD's alleged collections are not "reasonably likely to identify" Heiting. *See id.*

**i. TRD's browser data cannot and does not "identify" Heiting.**

The Complaint alleges the following "traits evident from a user's browser" are collected by the "digital data brokers" when a computer visits TRD's website, Compl. ¶ 13:

(1) computer geolocation, *id*.,
(2) computer device type, *id*.,
(3) computer cookie settings, *id*.,
(4) computer IP address, *id*. ¶ 23,
(5) timestamp of computer's visit to website, *id*.,
(6) browser type computer is using, *id.,*
(7) how often computer visits TRD's website, *id*. ¶ 24,
(8) previous website and search terms that brought computer to TRD's website, *id*., ¶ 27.

This information does not "identify" Heiting, nor could it. *See* § 638.50(c). It is merely, as the Complaint states, "information regarding Plaintiff's visit to the Website." Compl. ¶32.

The Complaint does not allege anyone is able to "identify" Heiting from the "information regarding [Heiting's] visit to the Website." *Id*. ¶ 32. Heiting "describes no actual instance of Defendant obtaining unauthorized access to her private information." *See Casillas*, 2024 WL 4873370, an *3 (rejecting pleading of "hypothetical digital fingerprinting" wherein location, race, browsing history and other traits "might identify" computer user).

Heiting's conclusory allegation that browsing habits somehow "identify" her cannot be credited. *Id*. ¶ 30. "Inferring" a computer user's demographic is not identifying Heiting. *Id.* ¶ 27. No more does an IP address or a third party's "profile" with "attributes" about browsing "identify" Heiting. *See id.* ¶ 16. Significantly, the Complaint does not allege that TRD, or any third party, obtains Heiting's name, contact information, email address, or any non-anonymized data. In fact, the Complaint alleges third parties assign a made-up "unique ID…tied to their device," thus admitting they do not have Heiting's identification. *Id*. ¶ 26.

It would be antithetical to conclude that general browsing data supports a privacy claim under CIPA, as California courts have uniformly found **no expectation of privacy** in it. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (IP address, geolocation, browser and operating system "insufficient to demonstrate that Defendants' conduct constituted a serious invasion of a protected privacy interest" under CA Constitution); *Kishnani v. Royal Caribbean*, No. 25-CV-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025), app. dismissed, 2025 WL 2943080 (9th Cir. Oct. 3, 2025) ("IP addresses, for example, can provide 'device and browser information' and 'geographic information'… but it is well established in the Ninth Circuit that 'there is no legally protected privacy interest in IP addresses.'") (citing cases).

**ii. Aggregate "Profiles" of Data from Pre-existing Sources are "Stored Content," Which Fall Outside of Statute.**

In an attempt to meet § 638.51's identification requirement, Heiting alleges third parties "are able to ascertain the identity of a website visitor by plotting" collected data and "other traits evidence from a user's browser." Compl. ¶ 13. Then, hypothetically or on "information and belief,"[3] browsing data can be "added" to data brokers' pre-existing "profile[] of Plaintiff" from information from "hundreds" of other websites. *Id.* ¶¶ 30-32. Taking anonymous data and "add[ing] the information" to hypothetical "profiles of Plaintiff" cannot qualify as "identifying," *id.*, because CIPA "***does not apply to stored communications or stored content***." § 629.51(b). Data from TRD allegedly "added to information" to identify Heiting is outside § 638.51.

First, Heiting alleges "profiling" is done by third parties, not TRD. *Id.* ¶ 27. TRD, for its part, "received other relevant data obtained by the Data Brokers regarding Plaintiff." *Id.* ¶ 32. It is not clear what "other relevant data" can be plausibly taken to mean. Regardless, Heiting does not allege TRD does any profiling or otherwise about Heiting's website visit. Nor does TRD have an agent or employer relationship with the third parties. *See supra* Sect. I. TRD does not collect information "reasonably likely to identify" Heiting as "the source[.]" *See* § 638.50(c).

Second, Heiting alleges data brokers "identify" her from stored content. She states data broker "gather information from a wide variety of sources" that are not TRD, "retailers, financial institutions, online marketplaces, subscription services, and loyalty programs." Compl. ¶ 15. Then, data brokers may "organize[] it into comprehensive profiles that may include thousands of

[3] All of Heiting's hypothetical scenarios are irrelevant and not well pleaded as to TRD. That includes a quote from an unnamed "CEO of a Data Broker" about what a random CEO might be able to "accumulate" on a platform not named or alleged to be used, is irrelevant and not a well pleaded allegation as to TRD. Compl. ¶ 17. Plaintiff also conjectures about what: (1) "a company like Defendant" has "incentives" toward, *id.* ¶ 18; (2) "government agencies" may be doing with unnamed companies, *id.* ¶ 34; and (3) other companies might be doing with universities, unnamed "tech companies," "federal executive branch," or pharmaceutical companies, amongst other irrelevant items. *Id.* ¶ 35.

attributes per individual," and "unify data about individual uses from multiple sources." *Id*. ¶ 16.

To identify Heiting only by taking anonymous data from Heiting's single visit to TRD's website and "**add[ing] that information**" to its alleged "profile" of Heiting, *id*. ¶ 32, is outside of CIPA: "This chapter applies to the interceptions of wire and electronic communications. It does not apply to stored communications or stored content." § 629.51(b). If TRD cannot identify Heiting from anonymous data collected from a single website visit "electronic communication," TRD does not violate the statute by *a third-party* aggregating "stored content" of *hundreds* of websites to "profile" Heiting's *computer*. *See id*.

Heiting concludes without support that "Defendant has in fact partnered with the Data Brokers…to deanonymize, identify and target prospective customers[.]" Compl. ¶ 19. However, she does not plead that TRD actually identified her. Nor does she explain how de-anonymization occurs or whether TRD is capable of it. Sect. § 638.51 does not prohibit collecting browsing data. It punishes collecting information "reasonably likely to identify the source of [an] electronic communication." § 638.51. Neither TRD nor the mentioned companies have done that.

**iii. TRD collects the contents of a browser's communication with a website, which cannot be collected by a "Trap and Trace Device."**

Heiting's claim fails for a further reason. By definition, "a 'trap and trace device' captures identifying information *about* a communication, but not its 'contents.'" *Mitchener v. CuriosityStream, Inc*., No. 25-CV-01471, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025), app. dismissed, 2025 WL 3191910 (9th Cir. 2025). However, Heiting alleges third parties collect "contents" of communications with TRD, not just information *about* the communication. Numerous courts have rejected § 638.51 claims for this reason. *Kishani*, 2025 WL 1745726, at *4 (citing cases). As one state court put it, "[f]or purposes of Section 638.51, 'trap and trace devices' by definition are tools which provide information about the 'who,' 'when,' and 'where'

of communications—**but not the 'what.'**" *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 1, 2025). Allegations not limited to "dialing, routing, addressing or signaling information" but also "substantive information… creat[ing] a collection of user behavior" are "contents of the communications." *Id.* Alleged "fingerprinting…reveal[ing] biographical information is 'the content' of a communication between visitor and Website, and thus, the claim and the case cannot survive." *Mitchener*, 2025 WL 2272413, at *5.

The Complaint alleges third parties collect the "contents" of Heiting's communications with TRD's website through "browser fingerprinting." Compl. ¶ 33. According to Heiting, the companies capture not just "who the visitor is" but also "***what*** they are doing." Compl. ¶ 39. Heiting admits the "crucial distinction" *distinguishing* her facts from a "trap and trace device." *See Price*, 2025 WL 1237977, at *3 ("'trap and trace devices' by definition" do not provide "the 'what'" of a communication). The Complaint's hypothetical scenarios, likening TRD to those collecting "Facebook messages" or "standardized test scores," indicate that the pleadings allege the "contents of communications" are collected. *Id.* ¶ 34.

This distinction "crystalizes the futility" of Heiting's claim. *See Mitchener*, 2025 WL 2272413, at *5. If TRD collects "only information regarding the 'metadata' of the communication," Heiting's "right to privacy is not invaded because [she] has no expectation of privacy as to that type of data (e.g., IP address or general geographic location)." *See id*. But if TRD collects "content information from communications" between Heiting and TRD, then it "is not a trap and trace device and § 638.50 does not apply." *Id*. Either way, the claim fails.

### C. Heiting is a Serial Litigant and Willing Internet User Who Consensually Visited TRD's Website to Manufacture a Claim.

Sec. 638.51 "did not, and does not, criminalize the process by which websites communicate with users who choose to access them." *Rodriguez*, No. 25STCV15350, at 8. Even

if § 638.51 did apply, it exempts "a provider of electronic [] communications service" using a "trap and trace device…[t]o operate [and] maintain…an electronic communication service." § 638.51(b)(1). Secondly, it exempts an electronic communication service "if the consent of the user of that service has been obtained." § 638.51(b)(5). Both exemptions apply.

TRD is an "electronic communications service." *See Casillas*, 2024 WL 4873370, at *4 ("Given the breadth of the statutory definition, [] website is an electronic communication service"). Heiting's visit to TRD's website allegedly "constitutes an electronic communication." Compl. ¶ 39. Logically, website operator TRD runs an "electronic communications service."

Heiting is a willing internet user intentionally visiting TRD's website. When an internet user visits a website, they voluntarily transmit an IP address, HTTP headers, and device identifiers. *See generally United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information."). These are analytics required for internet usage. *Id.* There is no unlawful "capture" when information is voluntarily conveyed by a user "visiting a website, where an IP address may be voluntarily disclosed." *See Licea*, 2024 WL 1698147, at *4 (citing *Forrester*, 512 F.3d at 51).

CIPA does not convert routine browsing information into a statutory violation simply because someone later alleges that grouping random information could be identifying. *See id.* (rejecting "potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator."). *See also Casillas v. BOP*, No. 24STCV15581, 2025 WL

2161288, at *2 (Cal Sup. June 18, 2025) ("Section 638.51 did not intend to criminalize the process by which all websites communicate with all users who choose to access them.").

Second, not only is Heiting a willing internet user, she is also a serial plaintiff who visited TRD's website to manufacture a claim. This lawsuit is one of over a hundred of nearly identical lawsuits filed by the same firm, and numerous where this firm uses Heiting to exploit a narrow provision of CIPA.[4] Heiting and her frequent flyer attorneys plead, at times word for word, the same allegations to "digital data brokers" and "clandestine" schemes to shake down a settlement.[5] Heiting's materially identical claims are per se evidence of intent to be "harmed."

## III. Heiting's Failure to State a Claim Dooms Entire Class.

Because Heiting fails to state a claim, the class necessarily fails as well. It is well established that a plaintiff who lacks a viable individual claim cannot represent a class. *Supra* Sect. I. Furthermore, specific problems plague Heiting's class certification—each member has individual consent to different privacy disclosures over time and in their browser settings.

## CONCLUSION

Defendants respectfully request this Court dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim with prejudice, as no amendment could cure the lack of Article III standing, and then grant such other relief as the Court deems just and proper.

---

[4] *Mitchener v. CuriosityStream, Inc.,* No. 25-CV-01471-NW, 2025 WL 2272413, at *2 (N.D. Cal. Aug. 6, 2025), app. dismissed, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) (dismissing without leave data collection claim as "one in a rash of similar actions brought by Plaintiff's counsel, Tauler Smith LLP, alleging violations of § 638.51.").

[5] *See Heiting v. Momentus Technologies LLC et al*., No. 2:25-cv-08246-SK (Sept. 9, 2025 C.D. Cal.) (alleging violations of § 638.51 almost verbatim from this Complaint); *Anne Heiting v. Viome Life Sciences, Inc. et al*, No. 2:24-cv-09630-MCS-RAO (Nov. 7, 2024 C.D. Cal.) (same); *Anne Heiting v. The Container Store, Inc. et al*., No. 2:23-cv-08073-DMG-AGR (Sept. 7, 2023 C.D. Cal.) (same); *Anne Heiting v. Valvoline, Inc.*, No. 2:23-cv-09121-MCS-JPR (Oct. 27, 2023) (C.D. Cal.) (same); *Anne Heiting v. Athenahealth Inc. et al*., No. 2:23-cv-10338-FLA-DFM (Dec. 12, 2023 C.D. Cal.) (same); *Anne Heiting v. Melissa & Doug, LLC et al*., No. 2:24-cv-03695-SPG-MRW (May 3, 2024 C.D. Cal.) (same); *Anne Heiting v. Frontier Airlines, Inc. et al.,* 2:25-cv-01375-SPG-PD (Feb. 18, 2025 C.D. Cal.) (same), amongst others.

Dated: April 3, 2026

Respectfully submitted,

By: _/s/ Gillian Vernick_

Gillian Vernick
David S. Korzenik
MILLER KORZENIK RAYMAN LLP
1501 Broadway, Suite 2015
New York, NY 10036
212-752-9200
gvernick@mkslex.com