**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE HEITING,<br>Plaintiff,<br><br>-against-<br><br>KORANGY PUBLISHING INC.,<br>Defendant. | Index No: 1:25-cv-10176-MKV<br><br>**DEFENDANT KORANGY PUBLISHING INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION FIRST AMENDED COMPLAINT** |

Gillian Vernick
David S. Korzenik
MILLER KORZENIK RAYMAN LLP
The Paramount Building
1501 Broadway, Suite 2015
New York, NY 10036
212-752-9200

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 1

LEGAL STANDARD ..... 2

I. THIS COURT LACKS JURISDICTION BECAUSE PLAINTIFF HAS NOT ESTABLISHED ARTICLE III STANDING. ..... 3

A. The FAC Pleads Three Irreconcilable, Contradictory Allegations of Injury. ..... 3

B. Not One Allegation is Concrete and Particularized. ..... 4

C. Speculative, Conclusory Allegations are Not Imminent. ..... 7

D. The Allegations Are Not Traceable to Defendant. ..... 8

E. The Allegations Have No Close Common-Law Analogue. ..... 9

i. Unjust enrichment is inapposite. ..... 10

ii. Public disclosure of private facts does not apply without a public disclosure of private facts. ..... 11

iii. Collecting an HTTP Request is not an intrusion upon seclusion. ..... 11

F. This Harm Hypothesis Cannot Be Redressed. ..... 13

II. THE FAC FAILS TO STATE A CLAIM UNDER CIPA § 638.51. ..... 14

A. CIPA § 638.51 does not apply to "communications from a tracking device." ..... 14

B. Stored "profiles" of browsing data from third parties are outside of CIPA. ..... 15

C. CIPA § 638.51 Applies to "Telephone Lines," Not Digital Data Collection. ..... 16

i. Statute's plain language shows it applies to "telephone lines." ..... 17

ii. Statute's legislative history shows it does not apply to internet data. ..... 19

D. Even if § 638.51 Applied, Web Analytics Are Not a "Trap and Trace Device." ..... 21

i. The data at issue is not "identifying" as § 638.51 requires. ..... 21

ii. TRD collects the contents of a browser's communication with a website, which cannot be collected by a "Trap and Trace Device." ..... 23

E. Heiting is a Serial Litigant and Willing Internet User Who Consensually Visited TRD's Website to Manufacture a Claim. ..... 24

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

### CASES

*Anderson Grp., LLC v. City of Saratoga Springs*,
805 F.3d 34 (2nd Cir. 2015) ....................13

*Aponte v. Ne. Radiology, P.C.*,
21 CV 5883, 2022 WL 1556043 (S.D.N.Y. May 16, 2022) ....................8, 9

*Apple Data Priv. Litig*.,
No. 5:22-CV-07069, 2026 WL 146025 (N.D. Cal. Jan. 20, 2026) ....................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................2

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016) ....................10

*Bradsbery v. Vicar Operating, Inc.*,
110 Cal. App. 5th 899 (Cal. Ct. App. 2025)....................19

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004) ....................10

*Calcano v. Swarovski N. Am. Ltd*.,
36 F.4th 68 (2nd Cir. 2022) ....................7

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ....................12

*Casillas v. Transitions Optical, Inc*.,
No. 23STCV30742, 2024 WL 4873370 (Cal. Sup. Sept. 9, 2024) ....................17, 22, 24, 25

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ....................3, 7, 8

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025)....................21

*Duke v. Luxottica U.S. Holds. Corp.*,
167 F.4th 16 (2d Cir. 2026) ....................13

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938) ....................16

*Est. of Getty*,
143 Cal. App. 3d 455 (Ct. App. 1983) ....................21

*Fed. Election Comm'n v. Akins*,
524 U.S. 11 (1998). ....................................................................................................4

*Gabrielli v. Insider, Inc.*,
No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ......................passim

*Gambles v. Sterling Infosystems, Inc.*,
234 F. Supp. 3d 510 (S.D.N.Y. 2017) ...........................................................4, 7, 13

*Giammatteo v. Newton*,
452 F. App'x 24 (2d Cir. 2011)...........................................................................2

*Guthrie v. Rainbow Fencing Inc.*
, 113 F.4th 300 (2d Cir. 2024) ...........................................................................7

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) ......................................18

*Harry v. KCG Americas LLC*,
No. 17-CV-02385-HSG, 2018 WL 4075885 (N.D. Cal. 2018), *aff'd*, 805 F. App'x 534 (9th Cir. 2020) ..........................................................................................4

*Himber v. Intuit, Inc.*,
No. 10-CV-2511, 2012 WL 4442796 (E.D.N.Y. Sept. 25, 2012) .......................................7

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ..........................................................................10

*J.M. v. Huntington Beach Union High Sch. Dist.*,
2 Cal. 5th 648 (2017)........................................................................................20

*Katz v. Donna Karan Co.*,
872 F.3d 114 (2d Cir. 2017) ..............................................................................8

*Khamooshi v. Politico LLC*,
24-cv-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .......................................12

*Kishnani v. Royal Caribbean Cruises*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) .....................17, 23

*Lakin v. Watkins Associated Indus.*,
6 Cal. 4th 644 (Cal Sup. 1993) .........................................................................18

*Licea v. Hickory Farms LLC*,
No. 23-ST-CV-26148, 2024 WL 1698147 (Cal.Super. Mar. 13, 2024).....................19, 25

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..........................................................................................4

*Lurenz v. Coca-Cola Co.*,
No. 22-CV-10941, 2025 WL 2773188, Order (S.D.N.Y. Sept. 29, 2025).........................9

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ....................21

*Martin v. Second Story Promotions, Inc.*,
No. 1:22-CV-10438 (MKV), 2024 WL 775140 (S.D.N.Y. Feb. 26, 2024) ....................5

*McMorris v. Carlos Lopez & Assocs., LLC*,
995 F.3d 295 (2d Cir. 2021) ....................7

*Medicaid Consumers for Continuity of Care v. McDonald*,
No. 1:25-CV-00565, 2025 WL 1224189 (S.D.N.Y. Apr. 24, 2025) ....................9

*Mills v. Saks.com LLC*,
No. 23-cv-10638 (ER), 2025 WL 34828 ....................12

*Mitchener v. CuriosityStream, Inc.*,
No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025), app. dismissed, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) ....................23, 24, 25

*Murthy v. Missouri*,
144 S. Ct. 1972 (2024) ....................13

*Nat'l Union Fire Ins. v. Seneca Fam. of Agencies*,
255 F. Supp. 3d 480 (S.D.N.Y. 2017) ....................17

*Nayab v. Capital One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) ....................12

*Novak v. Tucows, Inc.*,
No. 06CV1909(JFB)(ARL), 2007 WL 922306 (E.D.N.Y. Mar. 26, 2007), *aff'd*, 330 F. App'x 204 (2d Cir. 2009) ....................5

*People v. Franco*,
6 Cal. 5th 433 (Cal. 2018) ....................18

*People v. Sephora USA, Inc.*,
CGC-22-601380, 2022 CA Sup. Ct. Pleadings LEXIS 38450 (Cal. Super. Ct., Aug. 24, 2022) ....................20

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Apr. 1, 2025) ....................23, 24

*Reddington v. Staten Island University Hospital*,
511 F.3d 126 (2d Cir. 2007). ....................16

*Rodriguez v. Ink America Int'l Group LLC*,
No. 25STCV15350 (Cal. Super. Ct., Los Angeles Cnty. Dec. 10, 2025) ....................passim

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533, (2d Cir. 2024), cert. denied, 146 S. Ct. 880, 223 L. Ed. 2d 272 (2025)...12

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................................................................23

*Salveson v. JP Morgan Chase & Co.*,
166 F. Supp. 3d 242 (E.D.N.Y.), *aff'd*, 663 F. App'x 71 (2d Cir. 2016)..........................19

*Sanchez v. Cars. com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025)...........................17, 18

*Sanchez v. Clipper Realty, Inc.,*
No. 21 CIV. 8502 (KPF), 2026 WL 496555 (S.D.N.Y. Feb. 23, 2026).............................6

*Sanchez v. Clipper Realty, Inc.,*
No. 21 CIV. 8502, 2026 WL 496555 (S.D.N.Y. Feb. 23, 2026).......................................7

*Simon v. E. Ky. Welfare Rights Ord.,*
426 U.S. 26 (1976) ....................................................................................................8, 13

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (Cal. 2021) ...........................................................................................19

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2nd Cir. 2025) ...................................................................4, 5, 6, 12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ...................................................................................................3, 4, 6

*Sputz v. Alltran Financial,*
No. 7:2021cv04663, 2021 WL 5772033 (2023 S.D.N.Y.)..............................................11

*St. Pierre v. Dyer,*
208 F.3d 394 (2d Cir. 2000) .............................................................................................9

*Steel Co. v. Citizens,*
523 U.S. 83 (1998) .........................................................................................................13

*TransUnion LLC v. Ramirez,*
594 U.S.413 (2021) ..................................................................................................6, 10

*Travelers Ins. Co. v. 633 Third Assocs.*,
14 F.3d 114 (2d Cir. 1994) ...............................................................................................16

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .............................................................................................25

*Warden v. Kahn*,
99 Cal. App. 3d 805 (Ct. App. 1979) ..................................................................................21

*Whalen v. Michaels Stores, Inc.,*
689 F. App'x 89 (2d Cir. 2017)......................................................................................5, 7, 8

*Wooten v. Biolife Plasma Servs. L.P.*,
807 F.Supp.3d 1139 (E.D. Cal. 2025) .......... 4, 7, 8

*Xu v. Reuters News Media, Inc.*,
No. 24 CIV. 2466, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) .......... 6, 8, 10

**STATUTES**

18 U.S.C. §§ 2510-2523 .......... 15

CA Consumer Privacy Act .......... 20

Cal. Court R. 8.1115(a) .......... 17

Cal. Penal Code § 629.51 .......... 14, 15

Cal. Penal Code § 637.2 .......... 13

Cal. Penal Code § 638.50(c) .......... 16, 22

Cal. Penal Code § 638.51 .......... passim

Cal. Penal Code § 638.52 .......... 18

Fed. R. Civ. P. 54(d)(2)(A)–(B) .......... 13

Fed. R. Evid. 901 .......... 5

S.D.N.Y. Civ. R. 54.1(c)(7) .......... 13

Stats. 2015, Ch. 204, Sec. 2. (AB 929) .......... 19

**OTHER AUTHORITIES**

Cal. SB 690 .......... 21

## PRELIMINARY STATEMENT

Tester Plaintiff Anne Heiting and her attorneys have filed a "rash" of lawsuits just like this in California, misusing the California Invasion of Privacy Act (CIPA) § 658.51 to shakedown settlements from websites operating basic data analytics. Now, they have begun asserting claims in other jurisdictions, gambling for better results after California courts saw through these manufactured claims. The simple question facing this Court is: Is Heiting's strategy here sufficient for this Court to entertain such claims?

Two subsidiary issues cut to the heart of this question. (1) Has Heiting sufficiently alleged an Article III injury in fact? (2) If so, has she stated a facially plausible claim for relief? Both must be answered in the negative. On the first, Heiting lacks standing because she offers only contradictory, speculative theories of injury. In this, Heiting asks this Court to infer harm never properly pled. On the second, Heiting seeks to rely on a statute that does not apply to the facts pled, and regardless, she fails to plausibly plead that she has even been identified by her anonymized browsing data. This is not to say that data collection does not have privacy implications. It is also not to say that internet users have no rights or recourse. They do. The California state legislature has made policy decisions about the digital advertising ecosystem. Those are encompassed in another statute, the California Consumer Privacy Act (CCPA), which TRD is 100% compliant with. Digital privacy rights are not encompassed in CIPA, which concerns telephone privacy. Because Heiting lacks standing and fails to state a claim, her class action allegations also fail. The First Amended Complaint ("FAC") must be dismissed.

## STATEMENT OF FACTS

Defendant Korangy Publishing publishes *The Real Deal* ("TRD"). TRD covers commercial and residential real estate news. FAC ¶ 1. According to the FAC, TRD utilizes

digital analytics companies like Comscore Inc. ("Comscore"), Quantcast Corporation ("Quantcast"), Meta and Google (collectively "Data Brokers") to obtain visitor browsing metrics and/or run advertising campaigns. FAC ¶¶ 14, 16–17. Heiting claims that she visited TRD's Website once on March 11, 2025, and, in doing so, she transmitted to TRD a bundle of information "require[d]" to visit the website (an "HTTP Request"). FAC ¶¶ 16, 21. Heiting alleges that either:

(1) Her HTTP Request "identified" her to TRD. FAC ¶ 16; or
(2) Her HTTP Request "identified" her, and it was injuriously transmitted to Data Brokers; FAC ¶¶ 16, 60; or
(3) Her HTTP Request does not identify her, but it was sent to Data Brokers, who then identified her, or had already identified her, or will later identify her, using the HTTP Request and information from a "wide variety" of third-party sources, and that Data Brokers then identified her to TRD as part of a "surveillance scheme[.]" FAC, ¶¶ 12, 21–23, 28–29; 44.

## LEGAL STANDARD

On a Rule 12(b)(1) motion for lack of subject matter jurisdiction, Heiting has the burden of proving "by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011). Article III standing is the "irreducible constitutional minimum" in this analysis. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A district court "may refer to and rely on competent evidence outside of the pleadings" when ruling on a Rule 12(b)(1) motion. *Giammatteo,* 452 F. App'x 24, 27.

To survive a motion under 12(b)(6), "the pleadings must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, (2007)). A court will accept a FAC's well-pleaded facts as true, but "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'…nor does a FAC suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

### I. THIS COURT LACKS JURISDICTION BECAUSE PLAINTIFF HAS NOT ESTABLISHED ARTICLE III STANDING.

This action should be dismissed for lack of subject matter jurisdiction because Plaintiffs have not met their burden to establish Article III standing. “No principle is more fundamental to the judiciary’s proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.” *Clapper v. Amnesty Int’l USA*, 568 U.S. 398, 408 (2013)

(citation omitted). Standing is at the core of this “constitutional minimum.” *Spokeo*, 578 U.S. 330, 338. Standing “serves to prevent the judicial process from being used to usurp the powers of the political branches.” *Clapper*, 568 U.S. at 408. To meet this burden, Heiting must show that she has “(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.” *Spokeo*, 578 U.S. 330, 338. Heiting meets not one element. The FAC offers only “mere conclusory statements” insufficient to overcome TRD’s motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### A. The FAC Pleads Three Irreconcilable, Contradictory Allegations of Injury.

As an initial matter, parsing the alleged injury from the FAC is a vexing task. It oscillates between three irreconcilable theories:

(1) Conceding that the HTTP Request is necessary to visit in the first place, and that the alleged “provision of such data to third parties” is where the allegation of injury lies, FAC ¶¶ 21, 44;

(2) Suggesting that the HTTP Request itself is “reasonably likely to identify [Heiting,]” FAC ¶ 16; and

(3) Instead, arguing that TRD has “learn[ed] the identity” of Heiting from Data Brokers. FAC ¶ 32.

With Heiting herself unsure of exactly what her alleged injury is, "[t]hese contradictory allegations do not plausibly allege an injury in fact for purposes of establishing [Heiting's] standing." *Harry v. KCG Americas LLC*, No. 17-CV-02385-HSG, 2018 WL 4075885, at *7 (N.D. Cal. 2018), *aff'd*, 805 F. App'x 534 (9th Cir. 2020). Likewise, "there is certainly a point at which the linkage of information to identity [is] too uncertain, or too dependent on too much yet-to-be-done, or unforeseeable detective work[.]" *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 50 (2nd Cir. 2025) (citing cases). *See also Wooten v. Biolife Plasma Servs. L.P.,* 807 F.Supp.3d 1139, 1145 (E.D. Cal. 2025) ("Plaintiffs also do not sufficiently allege any actual injury. Rather, they allege that the third-party trackers have the capability to use these pieces of information to engage in ID bridging[.]"). Heiting is at such a point from the outset. While TRD will nonetheless address each of Heiting's theories, the FAC falls short of alleging an injury.

**B. Not One Allegation is Concrete and Particularized.**

An injury in fact must be both concrete and particularized. *Spokeo,* 578 U.S. 330, at 333. A concrete injury is one that is "real, and not abstract." *Id.* at 340. Particularization demands that an injury affect the plaintiff in a "personal or individualized way." *Gambles v. Sterling Infosystems, Inc.,* 234 F. Supp. 3d 510, 518 (S.D.N.Y. 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Courts will not pass upon abstract, intellectual problems, but adjudicate concrete, living contests between adversaries." *Id.,* at 350 (quoting *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998)) (internal quotations omitted). Although Heiting need not plead detailed factual allegations, they "[m]ust be more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A FAC relying on "naked assertion[s] devoid of "further factual enhancement" will not survive. *Id.* (citing cases).

Heiting being a tester does not diminish this requirement. Heiting, being "represented by the same counsel, [has] initiated" several "carbon-copy" actions "using largely identical language to state the same conclusory allegations."[1] *Martin v. Second Story Promotions, Inc.,* No. 1:22-CV-10438 (MKV), 2024 WL 775140, at *3 (S.D.N.Y. Feb. 26, 2024) (internal quotations omitted) (citation omitted). And while "testers can have standing," even Heiting "ha[s] to show that [she] has suffered an Article III injury in fact." *Id.* at *2 (citation omitted).

Heiting's first and third theories, *see supra* Part I.A., both posit "highly attenuated chain[s] of possibilities" to allege injury. *Whalen v. Michaels Stores, Inc.,* 689 F. App'x 89, 90 (2d Cir. 2017). Under both, identification is predicated on Data Brokers already having—or later gaining—data from a myriad of third parties. FAC ¶ 23 ("Data Brokers may already have access to your name and email addresses, as well as other websites you have visited in the past, to combine and/or match[.]"). This conjecture is "too uncertain," and "too dependent" on "too much yet to be done" and "unforeseeable detective work" to be concrete. *Solomon,* 136 F.4th 41, 50 (2nd Cir. 2025). To skirt this deficit, Heiting proffers screenshots of TRD advertising campaigns that allegedly "appear[ed] on" Meta and "Google"—**on the day the FAC was filed**. FAC ¶ 14, Ex. A, B. Yet, at no point does the FAC allege that **Heiting** received even a single advertisement from TRD.[2] *See Xu v. Reuters News Media, Inc.,* No. 24 CIV. 2466, 2025 WL 488501, at *2 (S.D.N.Y. Feb. 13, 2025) (no injury where plaintiff didn't even plead receiving a single ad). Likewise, Heiting's reliance on harms that may be generally attributable to data

---

[1] *See infra* n. 9.

[2] Regardless, the Court should decline to take judicial notice of the unauthenticated internet screenshots in Exhibits A–B. Fed. R. Evid. 901; *See also Novak v. Tucows, Inc.,* No. 06CV1909(JFB)(ARL), 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007), *aff'd,* 330 F. App'x 204 (2d Cir. 2009) ("Where postings from internet websites are not statements made by declarants testifying at trial and are offered to prove the truth of the matter asserted, such postings generally constitute hearsay[.]");

brokers is inapposite. News articles and the lawful Federal Government "subpoenas" say nothing about the injury **she** has allegedly incurred. FAC ¶ 51. Furthermore, if Data Brokers "already have access to your [identifying details]," one cannot be identified again. FAC ¶ 23.

Under her second theory, *see supra* Part I.A., Heiting does not explain how the information she sent to TRD is "reasonably likely to identify [Heiting]" or how it has harmed her. FAC ¶ 70. Not only does she concede that "she requested" this action. FAC ¶ 21. She also admits that the information in an HTTP request is a "[c]ollection of innocuous information[,]" necessary to visit a website in the first place. FAC ¶ 22. Unsurprisingly, courts have made clear that such information is not personal or identifying. *See Solomon,* 136 F.4th 41, 55 (neither an IP address nor a "cookie file" constitutes "identifiable information") (citing cases); *see also Gabrielli v. Insider, Inc.,* No. 24-CV-01566 (ER), 2025 WL 522515, at *12 (S.D.N.Y. Feb. 18, 2025) ("protected information include[s] plaintiffs' full names, titles of magazines subscribed to, home addresses, gender, age, ethnicity, income, religion, parental status, and political affiliation."). This is at most a "bare procedural violation" of § 638.51.[3] *Spokeo,* 578 U.S. at 342; *see also TransUnion LLC v. Ramirez,* 594 U.S. at 440 (2021) ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue[.]"); *see also Xu* 2025 WL 488501, at *2 (no injury under CIPA where plaintiff did not allege actual receipt of ad from tracking); *see also Sanchez v. Clipper Realty, Inc.,* No. 21 CIV. 8502 (KPF), 2026 WL 496555, at *20 (S.D.N.Y. Feb. 23, 2026).

Heiting needed to allege just one concrete injury **she sustained**. This simple threshold has not been cleared. *Id.* (citing *Guthrie v. Rainbow Fencing Inc.,* 113 F.4th 300 (2d Cir. 2024)) ("potential harms that could result" from conduct lack standing); *see also Wooten,* 807 F.Supp.3d

---

[3] Although, as discussed below, *see infra* Part 2.A., this statute does not even apply to the facts at hand.

1139, 1145 (allegations of harm attributable to data brokers are not an injury in fact).

**C. Speculative, Conclusory Allegations are Not Imminent.**

An alleged harm must also be, at a minimum, imminent. *See Lujan,* 504 U.S. at 560; *see also Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 410 (2013) (injury must be "certainly impending"). "Conclusory allegations" or "draw[ing] unwarranted inferences" do not support imminence. *Gambles,* 234 F. Supp. 3d., at 516. Standing cannot be premised on a "highly attenuated chain of possibilities[.]" *Whalen,* 689 F. App'x 89, 90 (citing *Clapper,* 568 U.S. at 410); *see also McMorris v. Carlos Lopez & Assocs., LLC,* 995 F.3d 295, 299 (2d Cir. 2021) ("since Plaintiffs failed to allege a substantial risk of identity theft or that such harm was certainly impending, they could not establish[.]"). And "[a]s the jurisprudence of the Supreme Court and Second Circuit has clearly articulated, claims of harm based upon speculation regarding decisions by third parties is insufficient to confer Article III standing." *Himber v. Intuit, Inc.*, No. 10-CV-2511, 2012 WL 4442796, at *7 (E.D.N.Y. Sept. 25, 2012).

The FAC does not "establish a 'material risk of future harm" which is "sufficiently imminent and substantial." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2nd Cir. 2022) (citation omitted). The Second Circuit test in the data breach context is instructive:

> "**The first factor** is whether the data at issue has been compromised as the result of a targeted attack intended to obtain the plaintiffs' data. **The second** is whether "at least some part of the compromised dataset has been misused. **The third** looks to the type of data at issue, and whether that type of data is more or less likely to subject plaintiffs to a perpetual risk of identity theft or fraud once it has been exposed." *McMorris* 995 F.3d 295, 298 (cleaned up) (emphasis added).

The third factor is of particular import. Imminence is more readily supported where a package of "high-risk information," such as a Social Security Number, date of birth, and name, is exposed. *Id.* But even a credit card number has not cleared this threshold. *See Katz v. Donna Karan Co.*, 872 F.3d 114, 120–21 (2d Cir. 2017); *Whalen,* 689 Fed. Appx. 89, 90. And an HTTP

Request certainly does not. *See Xu* 2025 WL 488501, at *2; *Gabrielli,* 2025 WL 522515, at *12; *Solomon,* 136 F.4th 41, 55; *Wooten,* 807 F.Supp.3d 1139, 1145. There is no "misuse" of this benign data. *See Aponte v. Ne. Radiology, P.C.,* 21 CV 5883, 2022 WL 1556043, at *4 (S.D.N.Y. May 16, 2022). And throwing in speculation about potential third-party actions does not shift the dial. *See Wooten,* 807 F.Supp.3d 1139, 1145. All of Heiting's theories of harm are beyond Article III's grasp.

**D. The Allegations Are Not Traceable to Defendant.**

An alleged injury must be "fairly traceable to a defendant's unlawful conduct." *Lujan,* 504 U.S., at 560–61. "[S]peculation about the decisions of independent actors" does not suffice. *Clapper,* 568 U.S., at 414. In short, an injury cannot result from "some third party not before the court." *Simon v. E. Ky. Welfare Rights Ord.,* 426 U.S. 26, 41 (1976); *see also Martin,* 723 F. Supp. 3d 270, 279 (alleged injury cannot be "too far removed" from challenged action).

The only allegation of injury remotely traceable to TRD is the collection of information in the HTTP Request—a result "she requested" for an "innocuous" HTTP Request that is neither "identifying" nor "personal." FAC ¶ 22; *see also supra* Part I.C.. The remainder are errant speculation on the harms of data brokers generally—"the independent action[s] of third parties not before the court[.]" *Simon,* 426 U.S. 26, 41 (cleaned up). Taking a news website's alleged use of data analytics—as almost all do—to mean that TRD "directed and controlled" almost *twenty* data brokers to gather information on Heiting from "retailers, financial institutions, online marketplaces, subscription services, and loyalty programs" to implement a "surveillance scheme" against a one-off website visitor is a *non sequitur* of conspiratorial scale. FAC ¶¶ 11–12, 28. This outlandish hypothesis does not suture the causal chain.

Moreover, a plaintiff "cannot create standing through a self-inflicted harm[.]" *Medicaid Consumers for Continuity of Care v. McDonald*, No. 1:25-CV-00565, 2025 WL 1224189, at *10 (S.D.N.Y. Apr. 24, 2025); *see also Lurenz v. Coca-Cola Co.*, No. 22-CV-10941, 2025 WL 2773188, Order (S.D.N.Y. Sept. 29, 2025) (no standing for plaintiff who self-inflicts injury solely to manufacture standing); *see also St. Pierre v. Dyer,* 208 F.3d 394, 401 (2d Cir. 2000) (same). Heiting is precisely at fault for her so-called injury. Heiting, a tester, and her counsel are frequent litigants of this fact pattern.[4] Their strategy is simple: (1) Heiting visits websites deemed exploitable; and (2) counsel demands a settlement payment and/or files suit. What precedes this is locating websites to exploit. Heiting entered TRD's website **knowing** its format and **wanting** the outcome she now claims is injurious—precisely a "self-inflicted harm which breaks the causal chain." *See Medicaid,* 2025 WL 1224189, at *10.

### E. The Allegations Have No Close Common-Law Analogue.

"An injury in law is not an injury in fact." *Aponte v. Ne. Radiology*, P.C., 21 CV 5883 (VB) (S.D.N.Y. May 16, 2022). Even if her allegations were not *prima facie* un-concrete, speculative, unparticularized, and untraceable to TRD, concreteness still demands a harm with a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit[.]" *TransUnion,* 594 U.S. at 427 (citation omitted). Intangible harm must also have a "close historical or common law analogue." *Id*. at 423. "Traditional examples of intangible harms include 'reputational harms, disclosure of private information, and intrusion upon seclusion.'" *Gabrielli,* 2025 WL 522515, at *5 (quoting *TransUnion,* 594 U.S. 413 at 425). This District has determined that the collection or disclosure of an HTTP request has no such analogue. *See Id.,* at *6-14 (holding, on parallel facts, no relationship to common-law unjust enrichment, intrusion upon seclusion, or public disclosure

[4] *See infra* n. 9 (Heiting and her counsel have filed 20+ suits alleging a violation of CIPA with the same facts).

of private facts); *see also Xu*, 2025 WL 488501, at *5-7. Even so, the elements of unjust enrichment, public disclosure of private facts, and intrusion upon seclusion will be addressed.

**i. Unjust enrichment is inapposite.**

Heiting alleges that TRD acted for "financial and commercial benefit," which "diminished the value" of Heiting's data. FAC ¶ 15, 73. The elements of unjust enrichment are "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain" enrichment. *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,* 373 F.3d 296, 306 (2d Cir. 2004). The Ninth Circuit found parallel to unjust enrichment where Facebook profited from "sensitive and valuable" information in which the plaintiff **retained a stake.** *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 599–601 (9th Cir. 2020). Similarly, this District has found "similar[ity]" to unjust enrichment where the plaintiff **paid** for a subscription and the defendant sold their **personal information**, reducing subscription value. *Boelter v. Hearst Commc'ns, Inc.,* 192 F. Supp. 3d 427, 436 (S.D.N.Y. 2016); *see also Gabrielli,* 2025 WL 522515, at *6–7 (applying these cases to § 638.51). The common denominator is the combination of personal information and some form of reduction in the value of their bargain for the plaintiff. Heiting's HTTP Request is not a form of "protected" or "sensitive and valuable" information that one can be unjustly enriched by. *Id.* Moreover, Heiting allegedly visited the website just once and does not allege that she paid for a subscription. *See Boelter,* 192 F. Supp. 3d., at 455 ("[b]ecause [plaintiffs] paid for their subscriptions … disclosure of [identifying] information deprived Plaintiffs ... of the full value of their subscriptions.") (cleaned up). There is no "value" Heiting could have "lost." *Id.* Unjust enrichment is inapposite.

**ii. Public disclosure of private facts does not apply without a public disclosure of private facts.**

Heiting alleges TRD inhibited her interest in "control[ling] [her] personal information." FAC ¶ 73. The tort of public disclosure of private facts occurs where a party "give[s] publicity to a matter concerning the private life of another" that is "highly offensive" and against "public interest." *Salazar v. Nat'l Basketball Ass'n,* 118 F.4th 533, 541 (2d Cir. 2024). At the jump, an HTTP Request does not contain "personal information," and thus does not concern "private life." *See supra* Part I.C. Consequently, its disclosure is not "reasonably offensive" nor against the "public interest." *Id.* Regardless, a defendant sharing private information with a vendor is not "public[ity.]" *Sputz v. Alltran Financial,* No. 7:2021cv04663, 2021 WL 5772033, at *9 (S.D.N.Y. Dec. 5, 2021). Publication must be to "so many persons that the matter must be certain to become one of public knowledge." *Id.,* at *7. Heiting only alleges sharing of her HTTP Request with Data Brokers—vendors. Heiting also points out that Data Brokers sometimes have data from "nearly every U.S. consumer." FAC ¶ 31. This cuts against the same data being "highly offensive" to a reasonable person or related to "private life[.]" *Salazar,* 118 F.4th at 541. Her metastasized last-minute allegation that sharing this same "innocuous" caused "mental anguish" and "chill[ed] [her] free online expression" fails for the same reason. FAC ¶¶ 22, 73.

**iii. Collecting an HTTP Request is not an intrusion upon seclusion.**

The FAC's second cause of action is for intrusion upon seclusion. This traditional cause of action will be analyzed in tandem with the other cause of action for efficiency.

"Under California law, a defendant is liable for intrusion upon seclusion when it intentionally intrudes into a private place, conversation, or matter in a manner that would be highly offensive to a reasonable person." FAC ¶ 77. The elements are (1) an "intentional invasion upon the solitude or seclusion of another or his private affairs" that (2) "would be

highly offensive to a reasonable person." *Caro v. Weintraub,* 618 F.3d 94, 100 (2d Cir. 2010) (citing cases). Publication or use is not an element. *Id.* The matter itself must be "deeply private, personal, and confidential." *Mills v. Saks.com LLC,* No. 23-cv-10638, 2025 WL 34828, at *4 (S.D.N.Y. Jan. 6, 2025). Data-based intrusion upon seclusion claims demand that the data itself be sufficiently private, personal information. *See Salazar,* 118 F.4th 533, 538–42.

HTTP Requests do not fit the bill. *Id.; see also Solomon,* 136 F.4th 41, 55 (HTTP Request or "cookie file" is not "identif[ying.]") (citing cases). An HTTP Request lacks the "deeply private, personal, and confidential" characteristic demanded. *Id.; see also Gabrielli,* 2025 WL 522515, at *6. It is "innocuous" information one could glean from sitting next to someone at a coffee shop—e.g., a MacBook, the location. FAC ¶ 21. And, as Heiting concedes, she "requested" the website visit. FAC ¶ 44. TRD cannot intentionally intrude by collecting what Heiting, a tenured CIPA plaintiff, voluntarily handed over—her actions do not align with her allegations. *See Caro,* 618 F.3d. at 100. Heiting's posturing of a website visit as a "conversation" does not move the needle. FAC ¶ 78, 80. This "conversation" is not private merely by virtue of being labeled as a conversation. *See Khamooshi v. Politico LLC,* 24-cv-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (An HTTP Request is not "embarrassing, invasive, or otherwise private information[.]"). And this tort concerns the means, not the ends. *See Caro,* 618 F.3d 94, 100. Heiting's waxing about Data Brokers is futile. *See Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019) ("Intrusion upon seclusion does not depend upon any publicity given to the person whose interest is invaded or to his affairs. Rather, it consists solely of an intentional interference with his interest in solitude or seclusion[.]") (cleaned up). The speculative actions of Data Brokers are irrelevant here.

### F. This Harm Hypothesis Cannot Be Redressed.

Finally, this Court can only redress injuries fairly traceable to TRD's actions. *See Simon,* 426 U.S. 26, 27. Likewise, Heiting's requested relief is both "foreclosed by prior decisions" and "implausible[.]" *Duke v. Luxottica U.S. Holds. Corp.,* 167 F.4th 16, 26 (2d Cir. 2026) (citing *Steel Co. v. Citizens,* 523 U.S. 83, 89 (1998)). Should Heiting visit TRD's website again, another HTTP Request would necessarily be transmitted. Here, relief cannot "redress or prevent actual or imminently threatened injury." *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). Moreover, when injury depends on how a "third party not before the court" will respond, redressability is speculative. *Id*. From what has been pled, even if TRD deleted Heiting's browsing data, she would still be independently "identified" by Data Brokers. *See e.g.,* FAC ¶¶ 19, 21, 35, 37. The Court cannot compel a slew of nonparties to "disgorge[]" Heiting's data. FAC at 25. Next, her requested relief is statutorily "foreclosed." *Duke*, 167 F.4th 16, at 26. CIPA limits damages to persons who have "been injured by a violation of this chapter" in actions "against **the person** who committed the violation." § 637.2.[5] Finally, compensatory damages are unavailable for "speculative" injuries. *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 54 (2nd Cir. 2015).

In sum, the Court cannot give redress to this unscathed plaintiff. And if Heiting lacks standing, the class lacks standing. *See Gambles,* 234 F. Supp. 3d., at 518("A plaintiff therefore may not rely on the fact that he or she has styled his case as a class action, because this adds nothing to the question of standing.")

[5] Plaintiff also seeks "reasonable attorney's fees and costs." FAC at 25. § 637.2 does not provide for attorney's fees. Therefore, the American Rule applies and attorneys' fees cannot be awarded. *Chambers v. NASCO*, *Inc.,* 501 U.S. 32, 33 (1991). Furthermore, Heiting's request is improper and untimely under F.R.C.P. 54(d)(2)(A)-(B) and S.D.N.Y. Civ. R. 54.1(c)(7).

## II. THE FAC FAILS TO STATE A CLAIM UNDER CIPA § 638.51.

*First*, the FAC pleads allegations that fall outside of the statutory definition of CIPA. *Second*, numerous California state courts have concluded § 638.51 does not apply to internet data. *Third*, Heiting fails to plead the alleged data is "reasonably likely to identify" her. In addition, Heiting alleges data is collected about ***what*** she is browsing, which is not a "trap and trace." *Finally*, Heiting is a willing internet user who consented to ancillary data collection.

### A. CIPA § 638.51 does not apply to "communications from a tracking device."

Heiting alleges that "a visit to a website," in this case, her visit to TRD's website on March 11, 2025, is an "electronic communication" as defined under § 629.51. FAC ¶ 67. While the FAC repeatedly alleges TRD is operating its website as a "tracking device," *see infra*, § 629.51 unambiguously states that an "'Electronic communication'…does not include **any communication from a tracking device**." § 629.51 (a)(2)(C).

Because Heiting alleges that TRD's website "enables ongoing tracking of website visitors as they visit new websites in the future," FAC ¶ 26, and the "electronic communication at issue in this case" is her visit to TRD's website, *id*. ¶ 67, this is a "communication from a tracking device." § 629.51 (a)(2)(C). *See also* FAC ¶ 17 ("designed to track…visitors"); ¶ 21 ("track the visitors"); ¶ 26 ("enables ongoing tracking of website visitors"); ¶ 38 ("cross-site tracking of users"); ¶ 40 ("placing tracking pixels on many websites"); ¶ 41 ("user could be tracked [] across news sites, blogs, e-commerce"); ¶ 43 ("ongoing tracking of website visitors"); ¶ 60 ("for tracking purposes"); ¶ 78 ("tracking software…on the Website"); ¶ 79 ("tracking technology…on the Website"); ¶80 ("visits to the Website would result in being…tracked on an ongoing basis"); ¶82 ("facilitates **ongoing tracking** of them on different websites"). As the statutory definition puts forth, Heiting's allegations are excluded from the definition of

"electronic communication." *See* § 629.51 (a)(2)(C) ("Electronic communication'…does not include **any communication from a tracking device**.") On this very clear basis, Heiting fails to state a claim under CIPA.

**B. Stored "profiles" of browsing data from third parties are outside of CIPA.**

Heiting's conclusory identification rests on stored content. Stored communication or stored content is electronic data held by third parties.[6] Specifically, identification relies on pre—existing data "from a variety of sources" that "could identify you individually …when this data is bundled together[.]" FAC ¶22. The FAC fails to state a claim because leveraging stored communication or content to "identify" an individual is outside of CIPA. § 629.51(b) ("This chapter…does not apply to stored communications or stored content.").

Heiting purports TRD "partnered with" third parties including Meta, Google, and other "data brokers" to "deanonymize and develop clandestine profiles," by "cross-referenc[ing] and link[ing] using unique identifiers like device IDs and cookies to unify data about individual users from multiple sources." FAC ¶¶ 15; 29. This involves gathering data "from a wide variety of sources," including "purchasing information from commercial sources like retailers, financial institutions, online marketplaces, subscription services, and loyalty programs." *Id.* ¶ 28. All this is "electronic data stored by third parties," or "stored communications or stored content." Fn 5.

CIPA does not bar the collection of generalized data. It prohibits installing a "trap and trace device" that is "reasonably likely to identify the source of a…electronic communication." § 638.50(c) ("trap and trace device…[is] reasonably likely to identify the source"). Heiting has only alleged that she visited TRD's website once, on March 11, 2025. FAC ¶16. As she admits, that visit collected "non-personal data." *Id.* ¶¶ 18-19. At most then, TRD is alleged to have

[6] "Stored communication" or "stored content" as per the Stored Communication Act, Title II of the Electronic Communications Privacy Act (EPCA), 18 U.S.C. §§ 2510-2523, protects the electronic data stored by third parties.

collected "non-personal data" about one website visit to "***third parties*** not involved in operation of the website itself" that "when put together is unique enough that it ***could*** identify an individual." *Id*. ¶¶ 21-22. The entire "identification" element of CIPA is speculatively farmed out to third parties with data from *other* third parties that "could," depending on some undefined quality "unique enough," meet the statutory requirement of identification. *See id*.

The FAC does not allege Heiting's single visit to TRD"s website could be "unique enough" to identify her without being "put together" or "bundled" with other stored content from a "variety of sources." *Id.* ¶¶ 21-22; 28-29. Nor does it show how "bundl[ing]" some "dozens of pieces of information, none [that] could identify you individually," could identify Heiting without stored content "data brokers may already have access to[.]" *Id*. ¶¶ 19-22. Heiting admits TRD's visit is used to "*further* profile Plaintiff," adding to what she alleges third parties already store. *Id*. ¶46. Because Heiting's concept of identification relies on "the collection of innocuous information" that must be "put together" with "stored content," Heiting has not pled a claim.

**C. CIPA § 638.51 Applies to "Telephone Lines," Not Digital Data Collection.**

New York federal courts must apply California substantive law as interpreted by the highest court in California. *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938)). If the highest state court has not ruled, a court "must carefully predict how the highest court of the forum state" would rule. *Id*. In this, "no deference" is owed to a federal "district court's interpretation" of state law. *See Reddington v. Staten Island Univ.*, 511 F.3d 126, 133 (2d Cir. 2007).

While the California Supreme Court has not weighed in on whether § 638.51 applies to digital data collection, multiple California state courts found that it does not based on plain language and legislative history. *See Sanchez v. Cars. com Inc.*, No. 24STCV13201, 2025 WL

487194, at * 3 (Cal. Super. Jan. 27, 2025) (dismissing § 638.51 claim of "IP address collecting software [] by a website to improve its user functionality and...marketing" because "legislative history of the CIPA suggests" it applies to "devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, not internet communications"); *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *3 (Cal. Super. Sept. 9, 2024) ("Section 638.50 does not address the privacy rights of Internet users."); *Rodriguez v. Ink America Int'l Group LLC*, No. 25STCV15350, at 6 (Cal. Super. Dec. 10, 2025) (dismissing CIPA claim on pleadings as "CIPA's provisions do not concern the analytics tools employed" online).[7]

**i. Statute's plain language shows it applies to "telephone lines."**

The FAC relies entirely on a mistaken premise. Digital data is not regulated by CIPA because "software is not a trap and trace device," and therefore, § 638.51 "does not apply." *Kishnani v. Royal Caribbean Cruises*, No. 25-CV-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) (dismissing Tauler pleading that TikTok pixel was "trap and trace" under § 638.51, finding no privacy in browsing "metadata.").

The plain language of § 638.51 cannot be squared with application to software-enabled collection of internet data. When interpreting statutory language, "each sentence must be read not in isolation but in light of the statutory scheme," such that "[a]n interpretation that renders related provisions nugatory must be avoided[.]" *Lakin v. Watkins Associated Indus*., 6 Cal. 4th 644, 659 (Cal Sup. 1993). Section 638.51 provides "a person . . . first obtain[] a court order" before "install[ling] or us[ing] a trap and trace device." § 638.51(a). The required court order

---

[7] While Cal. Court R. 8.1115(a) does not permit citation to unpublished opinions, here because "there is no other binding authority on which to rely, federal courts may consider unpublished California opinions as persuasive authority." *Nat'l Union Fire Ins. v. Seneca Fam. of Agencies*, 255 F. Supp. 3d 480, 487 (S.D.N.Y. 2017).

"***shall specify*** . . . [t]he number and, if known, physical location of ***the telephone line*** to which the . . . trap and trace device is to be attached[.]"§ 638.52(d)(3) (emphasis added). As multiple courts have acknowledged, "[e]xtending Section 638.51 to internet communications would render this provision 'nugatory.'" *Apple Data Priv. Litig*., No. 5:22-CV-07069, 2026 WL 146025, at *3 (N.D. Cal. Jan. 20, 2026).

This misapplication of CIPA "violates the rule that '[c]ourts should give meaning to every word of a statute if possible[.]" *People v. Franco*, 6 Cal. 5th 433, 437 (Cal. 2018); *see also Gutierrez v. Converse Inc*., No. 24-4797, 2025 WL 1895315, at *2 (9th Cir. July 9, 2025) (affirming summary judgment against Tauler firm making CIPA wiretapping claim to internet communications because "the phrase 'any telegraph or telephone wire, line, cable, or instrument'" did not "contemplate an online chat message sent on a smartphone").

While some earlier federal cases have decided differently, they cannot be squared with the statutory language and have not been uniformly adopted by California state courts. *Apple*, 2026 WL 146025, at *4 (acknowledging "recent decisions from California state courts have agreed" that § 638.51 does not apply to internet data collection); *Sanchez*, 2025 WL 487194, at *4 ("Both parties rely on several federal cases…[t]he Court is not persuaded by those authorities and therefore finds that Plaintiff fails to state a cause of action under Penal Code section 638.51."); *Rodriguez*, 25STCV15350, at 3 (finding statute "does not clearly apply to the web functions" while recognizing federal courts have reached "divergent conclusions about the scope of Cal. Penal Code section 638.51"). These decisions are actual applications of California law by California courts. *Salveson v. JP Morgan Chase & Co*., 166 F. Supp. 3d 242, 256 (E.D.N.Y. 2016), *aff'd*, 663 F. App'x 71 (2d Cir. 2016) (predicting high court ruling under *Erie* requires "giving proper regard to relevant rulings of the state's lower courts."). They are better evidence

than federal decisions, which are owed "no deference." *Reddington*, 511 F.3d at 133.

**ii. Statute's legislative history shows it does not apply to internet data.**

While most of CIPA was enacted in the 1960s, § 638.51 was added in 2015. *See* § 638.51 (added by Stats. 2015, Ch. 204, Sec. 2. (AB 929), effective January 1, 2016.) CIPA has since been amended twice, in 2016 and 2022, at a time when "websites have used the software at issue here." *Rodriguez*, No. 25STCV15350, at 6. Yet CIPA's "[l]egislative updates and commentary continue to ***explicitly cover cordless and cellular phone technology*** without reference to internet based communications." *See Licea v. Hickory Farms LLC*, No. 23-ST-CV-26148, 2024 WL 1698147, at *2 (Cal. Super. Mar. 13, 2024) (dismissing online "fingerprinting" as § 638.51 claim); *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 191 (Cal. 2021) (same).

"When the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." *Bradsbery v. Vicar Operating, Inc.*, 110 Cal. App. 5th 899, 910 (Cal. Ct. App. 2025). More specifically, "the Legislature has expressly referenced 'internet' or 'online' communications and services when extending protections beyond traditional telephonic technologies" when it added Cal. Penal Code § 632.01 in 2017. *Rodriguez*, 25STCV15350, at 5 (Sec. 632.01 prohibits confidential health communications on "Internet Web sites and social media"). "The absence of any comparable reference to website communications in Penal Code § 638 indicates a deliberate choice not to sweep ordinary website analytics within CIPA's pen register and trap and trace provisions." *Id*.

Notably, California comprehensively regulated data privacy five years after § 638.51 with CA Consumer Privacy Act (CCPA). The CCPA doesn't prohibit data collection, require a court order or express consent. As such, Heiting's "expansive reading of CIPA, criminalizing web-based analytical tools, would seemingly render CCPA void." *Rodriguez*, 25STCV15350, at

5. If web analytics fell under § 638.51, "using them without a court order would violate CIPA." *Id*. However, "CCPA presumes that such tools will be employed so long as the proper procedures, such as notice, opt-out and deletion are followed." *Id*.

Heiting admits that the CCPA, not § 638.51, governs data collection when she cites *Sephora*. FAC ¶¶ 25, 46. In *Sephora*, California AG Rob Bonta filed a complaint under **the CCPA** against Sephora. *People v. Sephora USA, Inc*., CGC-22-601380, 2022 CA Sup. Ct. Pleadings LEXIS 38450 (Cal. Super. Ct., Aug. 24, 2022), at ¶¶ 2-3 ("Sephora utilizes third-party tracking technology without alerting consumers and giving them the opportunity to control their data, they deprive consumers of the ability to limit the proliferation of their data on the web…**California's landmark privacy law, the CCPA, sought to prevent this**.").

Reading § 638.51 and CCPA as two laws regulating data differently[8] within five years renders one "superfluous," which California state courts do not tolerate. *See J.M. v. Huntington Beach Union High Sch. Dist.,* 2 Cal. 5th 648, 654 (2017) ("The Legislature would not have created [] specific but superfluous provision[s]."). The reasonable interpretation is that § 638.51 regulates phone privacy and CPPA regulates digital data. IHE is compliant with the CCPA. For IHE to be 100% compliant with "California landmark privacy law," and somehow liable under a statute that regulates *phone privacy*, is antithetical to due process.

This would be "substitut[ing] our view for a legislative decision which legislators have made after weighing the relevant policy decisions." *Est. of Getty*, 143 Cal. App. 3d 455, 464 (Ct. App. 1983). As the Ninth Circuit recently put it in rejecting the application of another section of CIPA to internet communications, it is not the courts' job to update a statute with language

[8] The CCPA requires websites provide consumers with the right to know about data collection, the right to request deletion of data collected, the right to opt out of data collection, and the right to limit use of information collected. Cal. Civ. Code §§ 1798.120, 1798.135 (West 2025). It does not require a warrant like § 638.51.

plainly not drafted to apply in such a way. *Gutierrez*, 2025 WL 1895315, at *3 ("California has failed to update § 631(a) to account for advances in technology since 1967. It is not our job to do it for them.") However, the California State Assembly *is working* to stop plaintiffs from misusing § 638.51 by introducing SB 690. The new bill clarifies that general business use of data, like digital advertising, is exempt under the statute. *See* Cal. SB 690 Crimes: Invasion of Privacy (2025–2026). In light of this clear legislative intent, Heiting's abusive misuse should stop here in dismissal, or be stayed until the assembly considers SB 690.

Finally, CIPA is part of the California Penal Code. As such, any "ambiguous" language "should be interpreted in favor of the alleged violator." *Warden v. Kahn*, 99 Cal. App. 3d 805, 812, n. 3 (Ct. App. 1979); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) ("rule of lenity," applicable in civil context, "requires court to limit the reach of criminal statutes to the clear import of their text"). Until the high court or legislature weighs in, "courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation." *Doe v. Eating Recovery Ctr.*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025); *Rodriguez*, 25-STCV-15350, at 3 (dismissing CIPA application to data because "provisions include only those offenses that come clearly within the import of the language and will not be given application beyond").

**D. Even if § 638.51 Applied, Web Analytics Are Not a "Trap and Trace Device."**

Heiting does not show how TRD can "identify" her from "non-personal data." ¶ 18-19.

**i. The data at issue is not "identifying" as § 638.51 requires.**

The FAC is non-committal about what specific data was *actually* collected *about Heiting* in her single website visit. Instead, it alleges what "data brokers" do generally, what they "may" collect, or what they are "designed" to do. *Id.* ¶¶ 15, 17. Even taking generalized allegations as true, these demographic insights into computer browsing are not "reasonably likely to identify"

one computer from another. The FAC alleges "traits evident from a user's browser" are collected by "data brokers" when a computer visits TRD's website, including geolocation, device type, cookie settings, *id.*, IP address, time stamp, browser, visit frequency, ¶¶ 35-36, and previous website and search terms. ¶ 42. This information does not "identify" Heiting. *See* § 638.50(c). It is merely, as the FAC states, "data[] regarding Plaintiff's visit to the Website." *Id.* ¶ 47.

The FAC itself flip-flops on if browser information is a "personal identifier[]," *id.* ¶ 17, calling it "seemingly non-personal data." *Id*. ¶ 18. Without the stored content of "extensive external records," *id.* ¶ 3, statutorily excluded from CIPA, all Heiting alleges is browsing metrics from one visit to TRD's website. *Id.* ¶ 16. The FAC does not allege TRD could reasonably identify Heiting from a single visit's "non-personal" raw browser descriptions. *Id.* ¶ 18

Heiting's conclusory allegation that browsing habits are "identifying" based on a quote from a "CEO of a Data Broker" unrelated to the Parties cannot be credited. *Id*. ¶ 30. "Inferring" demographic or consumer behavior is not identifying. *Id.* ¶¶ 30; 40. No more does an IP address or "profile" with "attributes" about browsing "identify" Heiting. *Id.* ¶ 29. The FAC "describes no actual instance of Defendant obtaining unauthorized access to her private information." *See Casillas*, 2024 WL 4873370, *3 (rejecting "hypothetical digital fingerprinting" where location, race, browsing history and other traits "might identify" user). In fact, third parties allegedly assign a made-up "unique ID," indicating no one has Heiting's actual identity. FAC ¶38.

General browsing data cannot support a privacy claim under CIPA when California courts have uniformly found **no expectation of privacy** in it. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (IP address, geolocation, browser and operating system "insufficient to demonstrate that Defendants' conduct constituted a serious invasion of a protected privacy interest" under CA Constitution); *Kishnani*, 2025 WL 1745726, at *4 ("IP

addresses, for example, can provide 'device and browser information' and 'geographic information'… but it is well established in the Ninth Circuit that 'there is no legally protected privacy interest in IP addresses.'") (citing cases).

**ii. TRD collects the contents of a browser's communication with a website, which cannot be collected by a "Trap and Trace Device."**

By definition, "a 'trap and trace device' captures identifying information *about* a communication, but not its 'contents.'" *Mitchener v. CuriosityStream, Inc.*, No. 25-CV-01471, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025), app. dismissed, 2025 WL 3191910 (9th Cir. 2025). However, Heiting alleges third parties collect "contents," not just information *about* the communication. Numerous courts have rejected § 638.51 claims for this reason. *Kishnani*, 2025 WL 1745726, at *4 (citing cases). As one state court put it, "[f]or purposes of Section 638.51, 'trap and trace devices' by definition are tools which provide information about the 'who,' 'when,' and 'where' of communications—**but not the 'what.'**" *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 1, 2025). Allegations not limited to "dialing, routing, addressing or signaling information" but also "substantive information… creat[ing] a collection of user behavior" are "contents of the communications." *Id.* Alleged "fingerprinting…reveal[ing] biographical information is 'the content' of a communication between visitor and Website, and thus, the claim and the case cannot survive." *Mitchener*, 2025 WL 2272413, at *5.

The FAC alleges third parties collect "contents" of Heiting's communications with TRD's website through "browser fingerprinting." FAC ¶17. Allegedly the companies capture not just "who she is" but also ***what*** they are doing—"what she watches, what she reads…what she buys online." *Id.*¶30. This "crucial distinction" distinguishes this allegation from a "trap and trace device." *Price*, 2025 WL 1237977, at *3 ("'trap and trace devices' by definition" do not

provide "the 'what'" of a communication). The FAC's hypothetical scenarios cited, likening TRD to government agencies collecting "Facebook messages" or "standardized test scores," indicate the "contents of communications" are alleged. *Id*. ¶ 48, n. 10. This "crystalizes the futility" of Heiting's claim. *See Mitchener*, 2025 WL 2272413, at *5. If TRD collects "only information regarding the 'metadata' of the communication," Heiting's "right to privacy is not invaded because [she] has no expectation of privacy as to that type of data (e.g., IP address or general geographic location)." *See id*. But if TRD collects "content information from communications", then it "is not a trap and trace device and § 638.50 does not apply." *Id*.

### E. Heiting is a Serial Litigant and Willing Internet User Who Consensually Visited TRD's Website to Manufacture a Claim.

Sec. 638.51 "did not, and does not, criminalize the process by which websites communicate with users who choose to access them." *Rodriguez*, No. 25STCV15350, at 8. It exempts "a provider of electronic [] communications service" using a "trap and trace device…[t]o operate [and] maintain…an electronic communication service." § 638.51(b)(1). Secondly, it exempts an electronic communication service "if the consent of the user of that service has been obtained." § 638.51(b)(5). Both exemptions apply.

TRD is an "electronic communications service." *See Casillas*, 2024 WL 4873370, at *4 ("Given the breadth of the statutory definition, [] website is an electronic communication service"). When an internet user visits a website, they voluntarily transmit an IP address, HTTP headers, and device identifiers. *See generally United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit…this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information."). There is no unlawful "capture" when "visiting a website, where an IP address may be voluntarily

disclosed." *See Licea*, 2024 WL 1698147, at *4 (citing *Forrester*, 512 F.3d at 51).

CIPA does not convert routine browsing data into a statutory violation because someone later alleges grouping random data could be identifying. *See id*. (rejecting "potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator."); *Casillas,* 2025 WL 2161288, at *2 ("Section 638.51 did not intend to criminalize the process by which all websites communicate with all users who choose to access them."). Not only is Heiting a willing browser, she is also a serial plaintiff who visited TRD's website to manufacture a claim. This suit is one of over a hundred of nearly identical filings by the same firm using Heiting to exploit a narrow provision of CIPA,[9] at times word for word.[10] This is per se evidence of intent to be "harmed."

**CONCLUSION**

Because Heiting fails to state a claim, the class necessarily fails as well. It is well established that a plaintiff who lacks a viable individual claim cannot represent a class. Further problems plague Heiting's class certification—each member has individual consent to different privacy disclosures over time and in their browser settings. Defendants respectfully request this Court dismiss the FAC with prejudice, as no amendment could cure its defects, and then grant such other relief as the Court deems just and proper.

---

[9] *Mitchener,* 2025 WL 2272413, at *2 (dismissing without leave data collection claim as "one in a rash of similar actions brought by Plaintiff's counsel, Tauler Smith LLP, alleging violations of § 638.51.").

[10] *Heiting v. Momentus Technologies LLC et al*., No. 2:25-cv-08246-SK (Sept. 9, 2025 C.D. Cal.) (alleging violations of § 638.51 almost verbatimFAC); *Anne Heiting v. Viome Life Sciences, Inc. et al*, No. 2:24-cv-09630-MCS-RAO (Nov. 7, 2024 C.D. Cal.) (same); *Anne Heiting v. The Container Store, Inc. et al*., No. 2:23-cv-08073-DMG-AGR (Sept. 7, 2023 C.D. Cal.) (same); *Anne Heiting v. Valvoline, Inc.*, No. 2:23-cv-09121-MCS-JPR (Oct. 27, 2023) (C.D. Cal.) (same); *Anne Heiting v. Athenahealth Inc. et al*., No. 2:23-cv-10338-FLA-DFM (Dec. 12, 2023 C.D. Cal.) (same); *Anne Heiting v. Melissa & Doug, LLC et al.*, No. 2:24-cv-03695-SPG-MRW (May 3, 2024 C.D. Cal.) (same); *Anne Heiting v. Frontier Airlines, Inc. et al.,* 2:25-cv-01375-SPG-PD (Feb. 18, 2025 C.D. Cal.) (same).

Dated: June 18, 2026

Respectfully submitted,

By: _/s/ Gillian Vernick_

Gillian Vernick
David S. Korzenik
MILLER KORZENIK RAYMAN LLP
1501 Broadway, Suite 2015
New York, NY 10036
212-752-9200
gvernick@mkslex.com