**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

JANE HEITING, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

KORANGY PUBLISHING INC., a New York corporation; and DOES 1 through 25, inclusive,

Defendants.

Case No. 1:25-cv-10176-MKV

**PLAINTIFF JANE HEITING'S OPPOSITION TO DEFENDANT KORANGY PUBLISHING INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION FIRST AMEND. COMPLAINT**

J. Evan Shapiro
Robert Tauler
TAULER SMITH LLP
90 Broad Street, Suite 703
New York, New York 10004
eshapiro@taulersmith.com
rtauler@taulersmith.com
(212) 708-8670 (New York office)
(213) 927-9270 (Main Office (L.A.))

# TABLE OF CONTENTS

TABLE OF AUTHORITIES....................3

I. INTRODUCTION....................6

II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT....................7

III. RELEVANT LEGAL STANDARDS....................12

IV. THE COURT SHOULD DENY THE MOTION TO DISMISS....................12

A. Plaintiff Has Article III Standing to Bring Her Claims....................12

B. The FAC Sufficiently States Claims Against Defendant....................17

1. Defendant's Arguments That Other Privacy Statutes Preclude This Action Are Erroneous....................17

2. The Data Broker Software is a Trap and Trace Device....................18

a. Cal. Penal Code §§ 638.50-51 Apply to Software & Websites....................18

b. The FAC Does Not Allege that the Data Broker Software Collected the "Contents of a Communication"; Additionally Such Transfers Would Not Defeat Plaintiff's § 638.51 Claim....................21

3. The Consent Exemption of § 638.51(b)(5) Does Not Apply Here....................23

4. The FAC States a Claim For Intrusion Upon Seclusion....................24

5. The CCPA Does Not Preempt and Did Not Repeal the Trap and Trace Law....................25

V. CONCLUSION....................25

**TABLE OF AUTHORITIES**

Cases

*Anderson v. NCAA*, No. 2:25-cv-11576-MWC-MBK, 2026 LX 158908 (C.D. Cal. Mar. 25, 2026) ........ 12, 14

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) ........ 11

*Biglang-Awa-Castro v. SBE Restaurant Group, LLC*, 25VECV03590, 2026 Cal. Super. LEXIS 25752 (L.A. Co. Super. Ct. Apr. 16, 2026) ........ 16

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 12

*Caldwell v. InMobi Pte., Ltd.*, No. 25-cv-09977-AMO, 2026 LX 229530 (N.D. Cal. Apr. 29, 2026) ........ 20

*Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156 (9th Cir. 2016) ........ 11

*Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095 (S.D. Cal. 2025) ........ 12, 14, 20

*Casillas v. Lucky Opco LLC,* 25STCV03961, 2026 Cal. Super. LEXIS 24132 (L.A. Co. Super. Ct. Jan. 5, 2026) ........ 16, 20

*Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016 (C.D. Cal. 2025) ........ 12, 16, 20, 21

*Casillas v. Transitions Optical, Inc.*, 2024 Cal. Super. LEXIS 68029 (Super. Ct. L.A. Co. Apr. 23, 2024) ........ 20

*Conohan v. Rad Power Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) ........ 16

*De Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645-AGT, 2025 LX 591947 (N.D. Cal. Dec. 22, 2025) ........ 12, 14

*Deivaprakash v. Conde Nast Digit.*, No. 25-CV-04021-RFL, 2025 U.S. Dist. LEXIS 193968 (N.D. Cal. Sept. 30, 2025) ........ 13, 17

*Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 LX 187347 (N.D. Cal. Apr. 21, 2026) ........ 12, 16

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022) ........ 11

*Est. of Dominguez v. Estes Express Lines, Inc.*, No. 2:25-cv-10514-DSF-MAR, 2026 LX 314584 (C.D. Cal. June 24, 2026) ........ 19

*Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 LX 326276 (N.D. Cal. Aug. 29, 2025) ........ 11

*Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) ........ 16, 19, 20

*Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782 (C.D. Cal. May 5, 2026) ........ 12, 14

*Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745 (N.D. Cal. Sep. 2, 2025) ........ 16

*Haleon US*, 2025 U.S. Dist. LEXIS 169503 .......... 12

*Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 LX 11956 (N.D. Cal. Jan. 29, 2026) .......... 12, 14

*Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076 (C.D. Cal. Feb. 3, 2025) .......... 16

*In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589 (9th Cir. 2020) .......... 12, 13

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 21

*In re Google Inc. Cookie Placement Consumer Privacy Litig*., 934 F.3d 316 (3rd Cir. 2019) .......... 13

*In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147 (N.D. Cal. 2025) .......... 18

*Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 LX 101303 (S.D. Cal. Mar. 12, 2026) .......... 12, 14

*Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 U.S. Dist. LEXIS 120002 (N.D. Cal. June 24, 2025) .......... 19

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) .......... 11

*Krzyzek v. Openx Techs., Inc*., No. 25-CV-5588-SI, 2026 U.S. Dist. LEXIS 15195 (N.D. Cal. Jan. 27, 2026) .......... 12, 14, 20, 21

*Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675 (C.D. Cal. Dec. 4, 2025) .......... 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 11

*Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .......... 16, 19, 20

*Mitchener v. Curiositystream, Inc.*, No. 25-cv-01471-NW, 2025 U.S. Dist. LEXIS 155489 (N.D. Cal. Aug. 6, 2025) .......... 19

*Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. July 25, 2024) .......... 16, 20

*Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017) .......... 13

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) .......... 11

*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 LX 598744 (N.D. Cal. Nov. 24, 2025) .......... 12, 14

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. Aug. 25, 2025) .......... 12, 13

*Price v. Headspace, Inc.*, 2025 Cal. Super. LEXIS 27951 (L.A. Super Ct. Apr. 1, 2025) .......... 16, 19

*Riganian v. The Data Brokers Holdings, Inc.*, 791 F.Supp.3d 1075 (N.D. Cal. July 18, 2025) .......... 16

*Saleh v. Nike Inc.,* 562 F. Supp 3d 503 (C.D. Cal. 2021) .......... 17

*Sanchez v. Glasscanopy, Inc.*, 2025 Cal. Super. LEXIS 18460 (L.A. Super. Ct. Feb. 28, 2025) 16, 19

*Sanchez v. Weber-Stephen Prods. LLC*, 2024 Cal. Super. LEXIS 72373 (Super. Ct. L.A. Co. June 4, 2024)....20

*Santoro v. Lulu & Georgia, Inc.*, 25STCV11722, 2025 Cal. Super. LEXIS 84529 (L.A. Co. Super. Ct. Nov. 21, 2025)....16

*Scarlett v. Future US, LLC*, CGC-25-621912, 2025 Cal. Super. LEXIS 56166 (S.F. Co. Super. Ct.
Sept. 5, 2025)....16

*Schallert v. RocketGenius*, 25STCV35081, 2026 Cal. Super. LEXIS 25177 (L.A. Co. Super. Ct. March 24, 2026)....16

*Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 LX 445234 (N.D. Cal. Oct. 16, 2025) ....20

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. October 21, 2024)....16, 17

*Shah v. MyFitnessPal, Inc.*, 25-CV-4430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026)....12, 14, 16, 18

*Smith v. LoanMe*, 11 Ca.5th 183 (2021)....17

*Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025)....15

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)....11

*U.S. Dep't of Justice v. Reporters Committee,* 489 U.S. 749 (1989)....14

*Valenzuela v. Intersystems Corp.*, 2025 Cal. Super. LEXIS 42550 (Orange Co. Superior Ct. Aug. 4, 2025)....16

*Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025)....12, 14

*Wolf v. Strankman*, 392 F.3d 358 (9th Cir. 2004)....10

*Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139 (E.D. Ca. 2025)....15

*Zamani v. Carnes*, 491 F.3d 990 (9th Cir. 2007)....19

*Zhizhi Xu v. Reuters News & Media, Inc.*, 25CV459918, 2025 Cal. Super. LEXIS 76169 (Santa Clara Co. Super Ct. Oct. 24, 2025)....16

Statutes

Cal. Penal Code § 629.51(a)(2)....10

Cal. Penal Code § 638.50(c)....10

Cal. Penal Code § 638.51(b)....19

**MEMORANDUM OF POINTS AND AUTHORITIES**

# I. INTRODUCTION

Plaintiff Jane Heiting ("Plaintiff") opposes Defendant Korangy Publishing Inc.'s ("Korangy" or "Defendant") Motion to Dismiss the First Amended Complaint (ECF No. 15) (the "Motion"). The First Amended Complaint (the "FAC") (ECF No. 13) alleges that Defendant uses the tracking software of two California-registered data brokers (the "Data Brokers", and the software, the "Data Broker Software") on its website, located at https://therealdeal.com (the "Website"). The Data Broker Software is designed to use many data points about the device and browser of a visitor to the Website, as well as information about the visitor's geolocation and webpage visits, to identify her. This identification aids Defendant in establishing individual targets for specific advertising and benefits the data brokers by providing them with data to build or enhance profiles on visitors to the Website. Additionally, once identified, a visitor is tracked whenever she visits any website deploying the Data Broker Software on the Website. All of this occurs without Defendant providing the visitor with any opportunity to reject such identification and tracking. Plaintiff asserts that the Website's deployment of the Data Broker Software violates California Penal Code §§ 638.50-51 (California's "Trap and Trace Law"), a provision of the California Invasion of Privacy Act, Pen. Code §§ 630 *et seq.* ("CIPA").

Defendant begins its Preliminary Statement with the sentence "Tester Plaintiff Anne Heiting and her attorneys have filed a 'rash' of lawsuits just like this in California [ . . . ] to shakedown settlements from websites operating basic data analytics." Defendant's Brief in Support of Motion ("Mot.") (ECF No. 15), at 1. The first problem with this statement is that the Plaintiff's name is ***Jane*** Heiting – not Anne. Moreover, to support its assertion that Plaintiff has filed a "rash" of lawsuits, Defendant cites to numerous cases filed by a different person, ***Anne*** Heiting. *See* Mot., at 25, n. 10. Further, no support for Defendant's reference to the software at issue in this case as "basic data analytics" is to be found in the FAC, whose allegations should govern this Motion, at least the portion of it Defendant filed under Fed. R. Civ. P. 12(b)(6). The FAC describes software that causes the identification of website visitors and that enables profiling and tracking across many websites on the internet – in other words, that performs more functions

than simply *analyzing* data. Defendant submits no evidence at all about the software that would suggest otherwise.

Defendant's opening sentence demonstrates that its strategy is to distract the Court from the straightforward allegations of the complaint, which on a motion to dismiss under Rule 12(b)(6), should govern. It would have the Court focus instead on Defendant's preferred set of facts and broad assertions that are not before the Court.

The Court should deny the Motion in its entirety. First, Plaintiff has sufficiently alleged an Article III injury in fact under federal appellate caselaw; the caselaw in question recognizes that the extensive profiling and tracking of an individual over a lengthy period, and which does not exclude the collection of data that could be personal in nature, embarrassing or confidential, constitutes an injury in fact for purposes of standing. Here, Plaintiff has identified concrete injuries resulting from Defendant's deployment of the Data Broker Software. It includes loss of control over data that the Data Brokers use (and which others can use) to identify her, and which is collected on an ongoing basis by the tracking process initiated by the Data Broker Software, as well as the diminution in value of such data from Plaintiff's perspective.

Second, Plaintiff has sufficiently alleged a claim under California's Trap and Trace Law, provisions of the California Invasion of Privacy Act ("CIPA") found at California Penal Code §§ 638.50-51. Counter to Defendant, the FAC does not allege anything about a "tracking device" within the meaning of Cal. Penal Code § 629.51. That statute defines "tracking device" as a device that tracks "the movement of a person or object" – not the tracking of the website a person visits. The FAC does not allege that identification of Plaintiff and similarly situated class members are identified by "stored content." The vast majority of California state and federal courts interpreting §§ 638.50-51 have found that they cover communications between electronic devices and servers, including visits to websites found on the internet. Many of these courts have refused to review the legislative history of the statutes finding that they unambiguously reach internet communications.

Defendant's additional arguments in support of dismissal under Rule 12(b)(6) are similarly unavailing. First, Defendant has handpicked a few cases, mostly inapposite, to support its contention that the Data Broker Software cannot identify individuals. These cases are not

reflective of the caselaw in general. More importantly, the argument asks the Court to reject the allegations of the FAC, which is improper under Fed. R. Civ. P. 12(b)(6). The FAC's allegations about the capabilities of tracking software are not speculation. Rather it cites to reputable, leading journals in the tech space, for example, Wired, and scientific studies conducted by academics at Johns Hopkins that support the assertion that ***unique*** fingerprints can be identified from ***a collection*** of hundreds of non-descript data points about a device and a browser, and a geographic location. Second, the FAC does not allege that the Data Broker software transmits the "contents of a communication" under the Trap and Trace Law, and Defendant has not demonstrated that the FAC's allegations somehow establish that. Moreover, some courts have expressly rejected the notion that a process that has the capability to *both* capture identifying or "record" data and contents – for example, something an individual types into a form on a website, like their name or a chat – are exempt from §§ 638.50-51. It is nonsensical to think that the California Legislature sought to let parties using illegal trap and trace devices off the hook because the trap and trace device they chose could – or even did – capture the contents of a communication. The more common sense interpretation of the statute is that the Legislature only wanted to provide law enforcement to obtain a court order to use a device that captured the source of a communication but to limit such authority to just the source, and not the communication's content. Third, Defendant has failed to demonstrate that it is a provider of an electronic or wire communication service such that it is eligible for exemption from § 638.51(a) based on the giving of "consent" by "the user." In any event, even if Defendant were such a provider, under relevant caselaw it would not be deemed to be the "user" of the website or the Data Broker Software that could provide the consent justifying the exemption under § 638.51(b)(5).

Defendant's contentions regarding Plaintiff's claim for intrusion upon seclusion are equally unavailing.

For these reasons, and those set forth below, the Court should deny the Motion in its entirety.

## II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

The FAC alleges that Defendant operates a website, https://therealdeal.com, which is the

online version of a publication about the real estate industry and significant real estate transactions in the U.S. entitled The Real Deal (the "Website"). FAC (ECF No. 13), ¶ 1.

The Website deploys the Data Broker Software, which is software provided by data brokers Comscore, Inc. and Quantcast Corporation. *Id.*, ¶ 2. It further alleges that the Data Broker Software was in operation when Plaintiff visited the Website from a physical location in California, on March 11, 2025. *Id.*, ¶ 16. Plaintiff had no knowledge of, and did not consent to, the operation of the Data Broker Software on her and her device; nor had Defendant obtained a court order or any other authorization to use the Data Broker Software at the time. *See id.*, ¶¶ 5, 33, 56, 70-71,79-80.

The FAC further alleges that during her visit, Plaintiff reasonably expected that her interaction with the Website would occur between her device and Defendant; she did not expect that information generated through the interaction would be disclosed to unrelated third parties. *Id.*, ¶80. However, as Plaintiff's browser requested and loaded webpages on the Website, and unknown to Plaintiff, the Data Broker Software caused the URLs of webpages Plaintiff visited on the Website, along with information about her, her location, her browser and her device that can be used to identify her, to be transmitted to the Data Brokers. *Id.*, ¶¶ 34-44. The FAC explains that the Data Broker Software identifies individuals through browser fingerprinting – a process by which hundreds of technical data points about an individual's device and browser are transmitted to data brokers. As the FAC makes clear, the transmission of such data points has ***nothing to do with the operation of the Website***, because third parties such as the Data Brokers are "not involved in the operation of [a] website visited, or the rendering of [a] website's contents on visitors' screens." *Id.*, ¶¶ 21-23.

Further, the Data Broker Software that acted upon Plaintiff includes the assignment of persistent identifiers – including, for example, "a unique cookie in the user's browser upon first contact which enables [the recognition of] that browser on subsequent[ly visited web] sites." *Id.*, ¶ 36. The software of Quantcast Corporation, deployed on the Website, is deployed on a large number of websites including "news sites, blogs [and] ecommerce [sites]." *Id.*, ¶ 41. It assigns a "persistent cookie ID" that is used for "tracking [that] occurs across a vast network of websites."

*Id.*, ¶ 43. The FAC does not reference any limitation on this tracking so that it can encompass internet activity that could reveal confidential, sensitive, embarrassing or highly personal information about the individual tracked.

Further, the FAC explains that as a result of the identification and tracking process initiated by Defendant's use of the Data Broker Software, the Data Brokers were enabled to build or enhance their profile of Plaintiff, and members of the putative Class in this action, "with the objective of monetizing the data [about them collected] by selling or licensing it to other entities including law enforcement and government agencies." *Id.*, ¶ 47.

The FAC alleges that the identification and ongoing tracking of Website visitors including Plaintiff benefitted Defendant, by facilitating the targeting of specific individuals for Defendant's marketing of The Real Deal. *Id.*, ¶¶ 1, 4, 13, 15, 81. It also alleges that the Data Brokers profit from these activities because the activities enhance the Data Brokers' profiles on the visitors, which the Data Brokers are free to market and sell. *Id.*, ¶¶ 4, 37, 73.

Plaintiff has brought this action on behalf of a class of individuals similarly situated who, while in California, visited the Website during the applicable limitations period, and were subjected to the Data Broker software, and/or the software of Google or Meta running on the Website. *Id.*, ¶ 57.

The FAC alleges that, as the result of being subjected to the Data Broker Software on the Website, Plaintiff and members of the putative class sustained numerous injuries:

> Defendant's invasion of their legally protected privacy rights; their loss of control over personal identifying information due to Defendant's actions; the diminution in value of their data and identity to Plaintiff and the Class members; Defendant's unauthorized creation of detailed behavioral profiles of them; mental anguish from knowledge of Defendant's secret monitoring; and chilling effects on their free online expression and inquiry due to Defendant's conduct.

*Id.*, ¶ 73. Moreover, the FAC alleges that data that can identify and characterize Plaintiff and

members of the Class, her attributes and her interests have economic value. *Id.*, ¶¶ 53, 56. That value "was diminished by Defendant's deployment of the [Data Broker Software] on the Website." *Id.*, ¶¶ 51, 54. "Defendant's surreptitious and unlawful transfer of personal information through the Data Broker Software diminished Plaintiff's and Class members' ability to participate in th[e] market [for such data] on informed terms, including to exercise the choice of whether to withhold, limit, or exchange [her] personal data for value." *Id.*, ¶ 56.

With respect to Plaintiff's intrusion upon seclusion claim, the FAC alleges that Plaintiff (and members of the putative Class) had objectively reasonably expectations of privacy regarding their interactions and communications with Defendant and the Website, and that by deploying the Data Broker Software Defendant intentionally caused an intrusion into those interactions and communications by the Data Brokers. *Id.*, ¶¶ 80-81. This all occurred without the consent of Plaintiff and members of the putative Class. *Id.*, ¶ 79. The deployment was intentional and perpetrated for Defendant's economic benefit. *Id.*, ¶ 81. Further, the intrusion described in the FAC would be highly offensive to a reasonable person because it initiates extensive tracking and profiling activity encompassing a large number of diverse websites. *Id.*, ¶ 82.

The FAC asserts that Defendant's actions detailed above constitute a violation of Cal. Penal Code § 638.51. Section 638.51 prohibits the installation or use of a "trap and trace device," as defined in Cal. Penal Code § 638.50(c), without a court order. Section 638.50(c) defines "trap *and* trace device" as:

> a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

Cal. Penal Code § 638.50(c).

Here, the FAC asserts that the Data Broker Software meets the above definition because it captures information about Plaintiff, her location, her device and her browser contained on "electronic impulses" that are "incoming" to third parties and the Website, and the information

constitutes "routing, addressing or signaling information" that is "reasonably likely to identify" Plaintiff and her device as the source of electronic communications. FAC (ECF No. 13), ¶¶ 66-69. The electronic communications in question are the data and/or signals exchanged between Plaintiff's device, on the one hand, and the Website – or the Data Brokers infrastructure to which the Data Broker Software directs the information about Plaintiff and her visit – on the other hand, during Plaintiff's visit.[1]

## III. RELEVANT LEGAL STANDARDS

A facial attack to the Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is confined to the allegations in the complaint. *Wolf v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested." *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 LX 326276, at *8 (N.D. Cal. Aug. 29, 2025) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "It is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted).

## IV. THE COURT SHOULD DENY THE MOTION TO DISMISS

### A. Plaintiff has Article III Standing to Bring Her Claims.

To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*

[1] The term "electronic communication" as used in Cal. Penal Code § 638.50(c) (definition of "trap and trace device") is defined in pertinent part as "any transfer of signs, signals, [ ] data, or intelligence of any nature [ ] by a wire, radio [or] electromagnetic [. . .] system." Cal. Penal Code § 629.51(a)(2).

*v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). Here, contrary to Defendant's contentions, the FAC sufficiently alleges that she has suffered injuries in fact meeting the requirements of *TransUnion*.

The FAC alleges that Defendant's subjection of Plaintiff to the Data Broker Software both violated her privacy and caused her particularized, concrete injuries. The injuries include the Data Brokers' ongoing tracking and profiling of Plaintiff; Plaintiff's loss of control over data that can be used commercially to identify her for targeted advertisement purposes, as well as the diminishment of the value ***to her*** of such data; and the possible (or even likely) sale of such data by the Data Brokers for purposes that have nothing to do with Plaintiff's visit to the Website.

Violations of individuals' rights to privacy fall into the category of traditionally recognized harms that constitute an Article III injury in fact. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy"). "A right to privacy 'encompass[es] the individuals' control of information concerning his or his person.'" *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 598-599 (9th Cir. 2020) (*"In re Facebook"*); *cf. Haleon US*, 2025 U.S. Dist. LEXIS 169503, at *12-13 (holding that "the Ninth Circuit has not disavowed *[In re] Facebook* in the wake of *TransUnion*").

In *In re Facebook*, the Ninth Circuit found that Facebook "continued to collect [plaintiffs'] data after they had logged off the social media platform, to receive and compile their personally identifiable browsing history." 956 F.3d at 598. The Court further noted that "[a]s alleged in the complaint, this tracking occurred 'no matter how sensitive' or personal users' browsing histories were." *Id.* The *Facebook* Court concluded that such surreptitious "unauthorized exploration" of someone's private life and information constituted a cognizable and concrete Article III injury: "Here, Plaintiffs have adequately alleged that Facebook's tracking and collection practices would cause harm ***or a material risk of harm*** to their interest in controlling their personal information. As alleged, Facebook's tracking practices allow it to amass a great degree of personalized information." *Id.* (emphasis added).

The *In re Facebook* Court's approach is echoed by *Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017). There, the Second Circuit held that a plaintiff could sue a company that used

cookies to monitor and sell internet-browsing data even though the data was anonymized. *Id.* at 34-35 (2d Cir. 2017). The court noted that "unauthorized accessing and monitoring of plaintiffs' web-browsing activity implicates harms similar to those associated with the common law tort of intrusion upon seclusion so as to satisfy the requirement of concreteness." *Id.* at 34. Even though there was no allegation that the data contained personally identifying data, the court concluded that the relevant authorities "do not signal that individual identification is required for standing purposes." *Id.* at 34-35. Further, the Court found that the type of accessing and monitoring of individuals' internet browsing at issue "implicates harms similar to those associated with the common law tort of intrusion upon seclusion." *Id.* at 34 (citing, *inter alia*, *In re Google Inc. Cookie Placement Consumer Privacy Litig*., 934 F.3d 316, 325 (3rd Cir. 2019) ("*In re Google*"); *In re Nickelodeon Consumer Privacy Litig*., 827 F.3d 262, 294 (3d Cir. 2016)).

In *In re Google*, the Court held that plaintiffs who had alleged that Google had engaged in the unauthorized tracking and sale of their browsing histories had standing to sue under the California constitution, and for intrusion upon seclusion. *Id.* at 325. The Court reasoned that the loss of control over personal data was itself an injury that gave rise to standing. *Id.*

Numerous California district courts have followed the approach of *In re Facebook*, *In re Google*, and *Pulsepoint*. A growing number of Ninth Circuit district courts have found standing where, as here, plaintiffs allege privacy harms caused by highly invasive tracking software such as the Data Broker Software – even where their complaints do not identify specific embarrassing, invasive or otherwise private information that was collected or disseminated. *See, e.g., Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782, at *8-10 (C.D. Cal. May 5, 2026); *Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 LX 187347, at *4 (N.D. Cal. Apr. 21, 2026); *Anderson v. NCAA*, No. 2:25-cv-11576-MWC-MBK, 2026 LX 158908, at *16-21 (C.D. Cal. Mar. 25, 2026); *Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 LX 101303, at *14-16 (S.D. Cal. Mar. 12, 2026); *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 LX 11956, at *2-4 (N.D. Cal. Jan. 29, 2026); *Shah v. MyFitnessPal, Inc*., 25-CV-4430-PCP, 2026 U.S. Dist. LEXIS 15193, at *3 (N.D. Cal. Jan. 27, 2026); *Krzyzek v. Openx Techs., Inc.*, 817 F. Supp. 3d 857, 862-64 (N.D. Cal. Jan. 27, 2026); *Hassid v. Alex and Ani,*

*LLC*, No. CV 25-0679 FMO (JCx), 2026 U.S. Dist. LEXIS 11238, at *5-7 (Jan. 20, 2026); *De Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645-AGT, 2025 LX 591947, at *4 (N.D. Cal. Dec. 22, 2025); *Casillas v. Six Flags Ent. Corp*., 812 F. Supp. 3d 1016, 1033 (C.D. Cal. 2025); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 LX 598744, at *2, *22 (N.D. Cal. Nov. 24, 2025); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. Nov. 18, 2025); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, 2025 WL 2939229, at *10 (N.D. Cal. Oct. 16, 2025); *Deivaprakash v. Conde Nast Digit.*, No. 25-CV-04021-RFL, 2025 U.S. Dist. LEXIS 193968, at *3-5 (N.D. Cal. Sept. 30, 2025).

Some of the California district court cases cited above rely also upon *U.S. Dep't of Justice v. Reporters Committee,* 489 U.S. 749, 763 (1989), in which the Supreme Court held that the right to privacy "encompass[es] the individual's control of information concerning his or her person." *See, e.g., NCAA*, 2026 LX 158908, at *16-17; *iHeartMedia*, 2026 LX 11956, at *2-3; *OpenX Techs*, 817 F. Supp. 3d at 862-63. Several of the district court decisions cited here identify the ***plaintiffs' loss of control over information relating to them disseminated to third parties through contemporary tracking software*** as a concrete injury grounding Article III standing. *See, e.g., Anschutz Ent. Grp.*, 2025 U.S. Dist. LEXIS 101782, at *9-*10; *NCAA*, 2026 LX 158908, at *18-19; *iHeartMedia, Inc.*, 2026 LX 11956, at *4.

Importantly, in one of these decisions, *NCAA*, the court found in light of their allegations of pervasive and extensive cross-site tracking, plaintiffs were not required to provide the "level of detail" concerning disclosed data that the defendants demanded on a motion to dismiss. 2026 LX 158908, at *20-21 (The court also found that it was "inappropriate to resolve at the pleading stage" whether certain information disseminated through tracking software "was sufficiently offensive to be held actionable at common law. *Id.*)

Defendant's frequently repeated claim that Plaintiff is only alleging the collection of 'browser type' and 'IP address' seeks to obscure the actual allegations of the FAC. The FAC does not allege that the dissemination of such seemingly non-personal data alone represents an injury in fact. Rather, such data is raised by Plaintiff because it is part of the browser fingerprinting process that allow the Data Brokers to identify individuals and then track them across a large

number of websites. Under the line of tracking software cases applying *In re Facebook* and *Reporters Committee* (and employing reasoning similar to that in *Pulsepoint*) cited above, the allegations about the nature, actions and capabilities of the tracking software at issue in the case were found to be sufficient. Plaintiffs in these cases were not required to make specific allegations that they were individually exposed to the routine operation of such software. The reason for this is obvious. It is in the nature of software that it will operate on individuals who are similarly situated in a uniform manner.

Counter to Defendant's argument, the allegations of the FAC establish a "material risk of future harm" that is "sufficiently imminent and substantial." *TransUnion*, 141 S. Ct. at 2210; *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 72 (2d Cir. 2022). The FAC alleges that Plaintiff and the putative Class were subjected to the software of the Data Brokers who are in the business of selling profiles of individuals based on information gathered through extensive tracking of their internet activity. There is no reason to believe that the data about Plaintiff and the Class members transmitted to the Data Brokers when they visited the Website was not processed in the routine way described in the FAC – or that the Data Brokers decided ***not*** to track Plaintiff and the Class members, collect their information, and sell the resulting profiles notwithstanding that engaging in such activity is the reason for their very existence. Defendant's resort to caselaw on data breaches is unavailing, as the ongoing and extensive tracking of individuals' browsing activity is almost certain to entail private, confidential and possibly embarrassing information.

Defendant's contention that Plaintiff has failed to demonstrate "traceability" for purposes of Article III standing is unavailing. The FAC alleges that Defendant installed and deployed the Data Broker Software for its economic benefit, and that the Data Broker Software caused data identifying Plaintiff to be transmitted to the Data Brokers; further it alleges that such action ushered Plaintiff into an invasive and extensive profiling and tracking regime in which she lost control of such data. ***Thus Plaintiff's injury is traceable to Defendant's actions.***

Defendant also errs in contending that there is no common law analogue to Plaintiff's assertion of injury caused by ongoing internet tracking and profiling. As the *Pulsepoint* Court recognized, such tracking and profiling offends traditional notions of privacy, and the law of

intrusion upon seclusion does not require the exposure of individualized, embarrassing information.

*Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), cited by Defendant, is inapposite. There the issue before the Court was not Article III standing, but rather whether the Video Privacy Protection Act, 18 U.S.C. § 2710, applied to Facebook software running on a digital streaming company's website and applications. *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139 (E.D. Ca. 2025), also cited by Defendant, is distinguishable on its facts. There plaintiffs alleged the "one-time collection and dissemination of plaintiffs' IP and email addresses, through [ ] third-party trackers …". *Id.*, at 1144. By contrast, this action alleges browser fingerprinting that facilitates ongoing internet browsing tracking, profiling and potentially the sale of profiles collected.

Finally, the injuries alleged by the FAC are redressable. At the very least, Defendant could be required to stop transmitting visitors' data to the Data Brokers. As explained in the FAC, the transmission of the data points the Data Brokers use to identify visitors for future tracking and profiling is not the same thing as the collection of technical information by Defendant itself for the purpose of rendering the Website's contents on visitors' screens. The FAC does not seek to prevent Defendant from gathering such information. Instead, it is squarely focused on the operation of the Data Broker Software – not required to operate the Website (under the allegations of the FAC) – and not the normal operation of the Website, as Defendant misleadingly suggests. Were Defendant to uninstall the software at issue, Plaintiff's data would not be transmitted to data brokers.

**B. The FAC Sufficiently States Claims Against Defendant.**

Plaintiff has sufficiently alleged that Defendant violated § 638.51 and committed the tort of intrusion upon seclusion. None of Defendant's arguments asserting that Plaintiff has failed to state a cause of action withstand basic scrutiny.

**1. Defendant's Arguments That Other Privacy Statutes Preclude This Action Are Erroneous.**

In a truly muddled set of arguments, Defendant asserts that the FAC alleges the Data Broker Software or the Website entails a "tracking device" for purposes of Cal. Penal Code § 629.51, and

that, therefore the communication between Plaintiff's device and the Website is a "communication from a tracking device" excluded from the definition of "electronic communication" in that statute. This makes no sense at all. As argued above, there is no allegation of a tracking device – something that the statute defines in the way the term is popularly used, in other words, a device that tracks physical movements. There is no allegation of such tracking in the FAC.

Defendant's references to "stored communications" also fail to provide a basis for dismissing Plaintiff's § 638.51 claim. Defendant suggests that the claim somehow runs afoul of the Electronic Communications Privacy Act or ECPA in this regard. Plaintiff has not alleged an interception in violation of the ECPA. The FAC alleges that data brokers – such as the Data Brokers here – have access to a lot of data on millions of Americans, and that they can match incoming data about individuals with stored data. However, it does not allege that the identification of visitors to the Website initiated by the deployment of the Data Broker Software ***requires*** resort to any stored data. Moreover, the FAC alleges installation of a device that is reasonably likely to identify the source of incoming communications. Nothing in either § 638.50(c) (defining a "trap and trace device") or § 638.51 excludes trap and trace devices that at some point involve review of stored data in addition to currently received data. Defendant's assertion that it is impossible for a device paired with a browser to create a unique fingerprint is no more than a rejection of Plaintiff's factual allegations. The FAC sets forth sources supporting Plaintiff's allegations about the effectiveness of digital fingerprinting.

**2. The Data Broker Software is a Trap and Trace Device.**

*a. Cal. Penal Code §§ 638.50-51 Apply to Software & Websites*

Software or code running on websites that "captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication" constitutes a trap and trace device under §§ 638.50-51. *See, e.g.,* ***Biglang-Awa-Castro v. SBE Restaurant Group, LLC*****, 25VECV03590, 2026 Cal. Super. LEXIS 29752, at *3-4 (L.A. Co. Super. Ct. Apr. 16, 2026)**; ***Schallert v. RocketGenius*****, 25STCV35081, 2026 Cal. Super. LEXIS 25177, at *3-4 (L.A. Co. Super. Ct. March 24, 2026)**; *Hassid v. Alex & Ani, LLC*, 2026 U.S.

Dist. LEXIS 11238, at *4-7 (C.D. Cal. Jan. 20, 2026); ***Casillas v. Lucky Opco LLC,* 25STCV03961, 2026 Cal. Super. LEXIS 24132, at *5-6 (L.A. Co. Super. Ct. Jan. 5, 2026);** *Casillas v. Six Flags Ent. Corp.*, 2025 U.S. Dist. LEXIS 260100, at *21-22 (C.D. Cal. Dec. 15, 2025); *Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675, at *39-42 (C.D. Cal. Dec. 4, 2025); ***Santoro v. Lulu & Georgia, Inc.*, 25STCV11722, 2025 Cal. Super. LEXIS 84529, at *8-9 (L.A. Co. Super. Ct. Nov. 21, 2025)**; ***Zhizhi Xu v. Reuters News & Media, Inc.*, 25CV459918, 2025 Cal. Super. LEXIS 76169, at *8-10 (Santa Clara Co. Super Ct. Oct. 24, 2025); *Scarlett v. Future US, LLC*, CGC-25-621912, 2025 Cal. Super. LEXIS 56166, at *11-14 (S.F. Co. Super. Ct. Sept. 5, 2025)**; *Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745, at *10-15 (N.D. Cal. Sep. 2, 2025); ***Valenzuela v. Intersystems Corp.*, 2025 Cal. Super. LEXIS 42550, at *3-4 (Orange Co. Superior Ct. Aug. 4, 2025)**; *Riganian v. The Data Brokers Holdings, Inc.*, 791 F.Supp.3d 1075, 1093-1094 (N.D. Cal. July 18, 2025); *Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *30-32 (N.D. Cal. July 14, 2025); ***Price v. Headspace, Inc.*, 2025 Cal. Super. LEXIS 27951, at *3-9 (L.A. Super Ct. Apr. 1, 2025)**; ***Sanchez v. Glasscanopy, Inc.*, 2025 Cal. Super. LEXIS 18460, at *8-9 (L.A. Super. Ct. Feb. 28, 2025)**; *Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076, at *8 (C.D. Cal. Feb. 3, 2025); *Conohan v. Rad* Power *Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865, 2025 WL 1111246, at *16 (C.D. Cal. Apr. 3, 2025); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378, at *6-10 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930-931 (N.D. Cal. October 21, 2024); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076-1077 (C.D. Cal. July 25, 2024).[2] This is because the plain wording of the sections is unambiguously broad, encompassing internet technology and software.

Numerous of the above cited decisions reject the contention that the use of the phrases "telephone number" and "telephone line" in § 638.52 either limits the Trap and Trace Law to telephone technology or renders §§ 638.50-51 ambiguous. *See, e.g., Samba TV*, 2026 LX 187347, at *21; *MyFitnessPal*, 2026 U.S. Dist. LEXIS 15193, at *22-23; *C2 Educ. Sys.*, 742 F. Supp. 3d at

---

[2] Plaintiff has cited 10 California state court decisions supporting this interpretation of the statutes, citations to which appear in bold.

1076; *Fandom, Inc.*, 754 F. Supp. 3d at 930.[3]

Moreover, the history of these statutory provisions establishes that the language used therein – particularly with respect to the definition of a "trap and trace device" – was enacted in 2015, and was copied from federal statutes that were intended by Congress to apply to the internet, and which courts have held to apply to software. *See Ortiz v. Foris Dax, Inc.*, No. 25-cv-08950-EMC (N.D. Cal. May 21, 2026) (setting forth the history of the Trap and Trace Law in the context of the enactment and amendment of the ECPA).

Defendant's citation to the legislative history of §§ 638.50-51 is unavailing as Defendant has not demonstrated any ambiguity giving rise to resort to such history. Both federal and California principles of statutory construction only allow use of legislative history where the language or structure of a statute is ambiguous.

Defendant errs when it argues that "web analytics" – its chosen term, which appears nowhere in the FAC – cannot form the basis of a CIPA claim because the data transmitted to the data brokers does not identify Plaintiff. First, the FAC alleges otherwise. Further, the FAC does ***not*** allege, as Defendant contends, that identification can only occur without "extensive external records." In any event, Defendant misconstrues § 638.51 by contending that a party violating it must perform the identification itself. All that is required is that a party install or use a device that can to a reasonably likely extent identify the source of an electronic or wire communication. *Saleh v. Nike Inc.,* 562 F. Supp 3d 503, 525 (C.D. Cal. 2021), is distinguishable in this regard, because it does ***not*** involve the allegation that the transmission of hundreds of seemingly non-personal data

---

[3] Plaintiff submits that Cal. Penal Code §§ 638.50-51 unambiguously encompass electronic or wire communication ***occurring over the internet and between devices and websites***, even when read in the context of § 638.52 and other surrounding CIPA provisions. Accordingly, Plaintiff disagrees with Defendant's contention that the court must apply the "rule of lenity" in applying §§ 638.50-51. The rule of lenity only applies in very limited circumstances, where there are two reasonable interpretations of a statute that "stand in relative equipoise." *Smith v. LoanMe*, 11 Ca.5th 183, 202 (2021); *Deivaprakash v. Condé Nast Digit.*, 798 F. Supp. 3d 1100, 1107-08 (N.D. Cal. 2025). Here, Plaintiff's interpretation, based on the broad, plain language of the definitions of "trap and trace device" and "electronic communication" is far more reasonable than Defendant's attempt to narrow these statutes based upon law enforcement techniques that appear to have been in use in 2015, when the Trap and Trace Law was enacted, addressed in § 638.52. *See Conde Nast Digit.*, 798 F. Supp 3d at 1107-08.

points enabled a third party recipient to identify, profile and track the plaintiffs in that case.

*b. The FAC Does Not Allege that the Data Broker Software Collected the "Contents of a Communication"; Additionally Such Transfers Would Not Defeat Plaintiff's § 638.51 Claim.*

Defendant's assertion that the FAC somehow alleges that the Data Broker Software captures the contents of electronic communications is erroneous. First, the FAC does not allege that such contents are captured. Second, the determination of what constitutes the "contents of a communication" is a complex matter. Defendant treats information that is revealing about an individual – such as the URL of a political website visited by her – as synonymous with "contents." Yet Defendant has failed to cite any legal authority to support such a broad view. In interception cases, defendants frequently assert a very narrow scope for "contents," such as expressive activity by an individual, for example, the entering in of information into a website form. That Defendant has failed to pinpoint what allegation gives rise to its suspicion of content-collecting reveals that it is simply throwing the proverbial spaghetti at the wall.

Defendant's reliance on *Mitchener v. Curiositystream, Inc.* and *Kishnani v. Royal Caribbean Cruises Ltd.* in this regard is both unavailing and misleading. *Mitchener* and *Kishnani* expressly limit their reasoning to a particular type of fingerprint, one that reveals ***biographical*** information. *See Mitchener v. Curiositystream, Inc.* (N.D. Cal. Aug. 6, 2025) 2025 U.S. Dist. LEXIS 155489, at 11 ("Any 'fingerprint' that reveals ***biographical*** information is 'the content' of any communication between visitor and Website." (emphasis added); *Kishnani v. Royal Caribbean Cruises Ltd.* (N.D. Cal. June 24, 2025) 2025 U.S. Dist. LEXIS 120002, at 10-11 (same). The FAC does not allege that any "biographical information" was, or necessarily is, captured by the Data Broker Software. The holding in *Price v. Headspace, Inc.,* No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 1, 2025) involved the view of the judge that the complaint alleged capturing of ***images*** of website. No such image capturing is alleged in the FAC.

Further, even if the FAC ***did*** allege that the Data Broker Software captured both recording data ***and*** the contents of communications, under the most appropriate interpretation of the Trap and Trace Law the Data Broker Software would still constitute a trap and trace device under Cal. Penal Code § 638.50(c). This is for 2 reasons. First, it is doubtful that the California Legislature, who enacted CIPA to protect Californian's privacy, would intend for a defendant to evade liability for utilizing a tool that both operates as an eavesdropping device, and one that identifies the source of a communication. An interception claim under Cal. Penal Code § 631(a) for devices that facilitate eavesdropping on the contents of a communication is subject to limitations that are not applied to claims based on trap and trace devices or pen registers, such as the party exception. Moreover, an obvious purpose served by the language "but not the contents" is to maintain confidentiality over expressive speech from government oversight in situations where law enforcement provides sufficient justification for obtaining pen register or trap and trace orders to address criminal activity. Such purpose is not implicated in the context of a civil action against a private entity.

Under relevant caselaw, the fact that specific software operating on a website is capable of capturing the contents of visitors' communications with the site ***does not mean that the software cannot also constitute a trap and trace device or a pen register*** under § 638.51(a) for enabling the identification of the source of electronic or wire communications at the same time. *See, e.g., MyFitnessPal*, 2026 U.S. Dist. LEXIS 15193, at *23; *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1152-55 (N.D. Cal. 2025) (holding the phrase "but not the contents of a communication" as used in Cal. Penal Code § 638.50 (b) (pen register) should be "interpreted to define a pen register as any device that records 'dialing, routing, addressing, or signaling information' while clarifying that a device that records only 'the contents of a communication' is not a pen register, and is instead subject solely to CIPA's wiretap provisions" in order to effectuate the California Legislature's intent); *Shahnaz Zarif v. Hwareh.com, Inc.* (S.D. Cal. Feb. 12, 2025), No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519, at *39 (denying a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) claims filed under Cal. Pen. Code §§ 631(a) and 638.51 based on a website's use of related software).

### 3. The Consent Exemption of § 638.51(b)(5) Does Not Apply Here.

The Court should reject Defendant's contention that it is exempt from § 638.51(a) under the consent exemption in § 638.51(b)(5). The exemption is only available to a "provider of electronic or wire communication service." § 638.51(b).

The argument fails at the threshold because this is a pleading challenge, and the FAC alleges that Defendant is ***not*** a provider of communication service. *See* FAC (ECF No. 13), ¶ 72. Defendant has failed to cite any caselaw establishing that it is such a provider ***as a matter of law***. Further, California district and state courts have refused to rule in the context of a pleading challenge that the operation of a website alone constitutes a "communication service" for purposes of CIPA. *See, e.g., Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 LX 273067, at *32-33 (N.D. Cal. July 14, 2025); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378, at *13-14; *Glasscanopy, Inc.*, 2025 Cal. Super. LEXIS 18460, at *9-10; *Sanchez v. Weber-Stephen Prods. LLC*, 2024 Cal. Super. LEXIS 72373, at *9-10 (Super. Ct. L.A. Co. June 4, 2024); *Casillas v. Transitions Optical, Inc.*, 2024 Cal. Super. LEXIS 68029, at *5 (Super. Ct. L.A. Co. Apr. 23, 2024).[4]

Moreover, California district and state courts have rejected arguments that a website operator is a "user" of electronic or wire communication service for purposes of the consent exemption of § 638.51(b)(5). *See, e.g., Camplisson*, 809 F. Supp. 3d at 1108; *C2 Educ. Sys. Inc.*, 742 F. Supp. 3d at 1077; *Lucky Opco LLC,* 2026 Cal. Super. LEXIS 24132, at *5-6.

Finally, consent is an affirmative defense, and is an issue of fact inappropriate for determination on a pleading challenge.

As argued above, Defendant asks the Court to simply accept its word that Plaintiff is a "tester" for purposes of Defendant's consent argument. It cites to a list of seven cases filed by the undersigned firm, only one of which was brought in the name of Plaintiff Jane Heiting. The remaining six cases were filed by ***Anne*** Heiting, a different person. Defendant has therefore failed

[4] The burden to establish status as a "communication service" provider falls upon the defendant seeking to avail itself of the consent exemption. *See, e.g., Gabrielli*, 2025 LX 273067, at *32-33; *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *14.

to demonstrate any "tester" status. Furthermore, Defendant cannot seek to introduce any new evidence for judicial notice through case citation on ***reply***; or, at the very least, the Court has the discretion to ignore such evidence, as Plaintiff has no opportunity to challenge it at this point.

**4. The FAC States a Claim For Intrusion Upon Seclusion.**

The FAC alleges that Plaintiff had an expectation of privacy in her interactions with the Website. Further, the FAC alleges that the Data Broker Software defeats that expectation and intrudes upon those interactions in a manner that would be considered highly offensive to a reasonable person and an egregious breach of social norms. This is because deployment of the Data Broker Software leads to the creation or enhancement of extensive profiling of her, and ongoing tracking of her activity on the internet, covering a large number of websites.

Deployment of tracking software that engages in the type of identification, profiling and tracking carried out by the Data Broker Software that Defendant installed on the Website forms the basis of an actionable intrusion upon seclusion claim under California law. *See, e.g., Caldwell v. InMobi Pte., Ltd.*, No. 25-cv-09977-AMO, 2026 LX 229530, at *7-14 (N.D. Cal. Apr. 29, 2026); *Six Flags Ent. Corp.*, 812 F. Supp. 3d at 1029-1030; *OpenX Techs*, 817 F. Supp. 3d at 864-65; *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 LX 445234, at *8 (N.D. Cal. Oct. 16, 2025). These cases found that plaintiffs had a reasonable expectation of privacy that their visit to a commercial website would not give rise to ongoing, pervasive tracking and profiling of them, capturing all sorts of information based on their activity on the website, but also on other websites in the future. *See, e.g., OpenX Techs*, 817 F. Supp. 3d at 865; *Six Flags Ent. Corp.*, 812 F. Supp. 3d at 1030.

Moreover, the determination of whether the intrusion by the Data Broker Software on the Website would be highly offensive to a reasonable person can rarely be decided as a matter of law, as opposed to a question of fact; therefore courts typically refuse to make such a determination on a pleading challenge. *See, e.g., OpenX Techs*, U.S. 817 F. Supp. 3d at 864-65 ("courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy

intrusion is") (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019)).

**5. The CCPA Does Not Preempt and Did Not Repeal the Trap and Trace Law.**

Defendant's contention that the California Consumer Privacy Act or CCPA somehow preempts or precludes Plaintiff's § 638.51 claim is unavailing.

California courts have found that the CCPA does not displace or supersede CIPA's Trap and Trace Law. Rather, the CCPA regulates certain duties related to consumer information practices after data is collected, while CIPA governs the unlawful interception and acquisition of electronic communications and routing information in the first instance. *See, e.g. Brooks v. Thomson Reuters Corp.*. No. 21-cv-01418, 2021 U.S. Dist. LEXIS 154093, at *18–19 (N.D. Cal. Aug. 16, 2021); *Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 LX 79390, at *15 (N.D. Cal. Dec. 12, 2024)). The CCPA itself confirms it is intended to "supplement existing laws relating to consumers' personal information," not to curtail them. Cal. Civ. Code, § 1798.175; *see also, Thomson Reuters Corp.*, at *18–19 (noting the CCPA is not meant to curtail other privacy statutes). Consistent with that directive, courts have recognized that "CCPA and CIPA are complementary," and that the CCPA does not preempt or conflict with CIPA claims. (*See, e.g., Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *15.)

## V. CONCLUSION

For the reasons stated herein, the Court should deny in its entirety Defendant's Motion to Dismiss the First Amended Complaint.

DATED: July 1, 2026

**TAULER SMITH LLP**

By: /s/ J. Evan Shapiro
J. Evan Shapiro, Esq.

*Attorneys for Plaintiff Jane Heiting*