**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JANE HEITING, | | |
| | Plaintiff, | Index No: 1:25-cv-10176-MKV |
| -against- | | **ORAL ARGUMENT REQUESTED** |
| | | **REPLY MEMORANDUM IN** |
| KORANGY PUBLISHING INC., | | **FURTHER SUPPORT OF** |
| | | **DEFENDANT KORANGY** |
| | Defendant. | **PUBLISHING INC.'S MOTION TO** |
| | | **DISMISS PLAINTIFF'S CLASS** |
| | | **ACTION FIRST AMENDED** |
| | | **COMPLAINT** |

Gillian Vernick
David S. Korzenik
MILLER KORZENIK RAYMAN LLP
The Paramount Building
1501 Broadway, Suite 2015
New York, NY 10036
212-752-9200

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................ 1

I.    HEITING LACKS ARTICLE III STANDING. ................................................................... 2

II.   THE FAC FAILS TO STATE A CLAIM UNDER CIPA § 638.51. ..................................... 5

CONCLUSION.............................................................................................................................. 10

## TABLE OF AUTHORITIES

**CASES**

*Brooks v. Thomson Reuters Corp.*,
   No. 21-cv-01418, 2021 U.S. Dist. LEXIS 154093 (N.D. Cal. Aug. 16, 2021) ........................ 10

*Calcano v. Swarovski N. Am. Ltd.*,
   36 F.4th 68 (2nd Cir. 2022) ................................................................................................. 4

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)............................................................................................................. 4

*Cooper v. Slice Techs., Inc.,*
   No. 17-CV-7102, 2018 WL 2727888 (S.D.N.Y. June 6, 2018) ................................................ 4

*Deivaprakash v. Condé Nast Digit.*,
   798 F. Supp. 3d 1100 (N.D. Cal. 2025) ................................................................................. 7

*Garon v. Keleops USA, Inc.,*
   2025 U.S. Dist. LEXIS 170745 (N.D. Cal. Sept. 2, 2025) ........................................................ 7

*Gutierrez v. Converse Inc.*,
   No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) ........................................................ 10

*Himber v. Intuit, Inc.*,
   No. 10-CV-2511, 2012 WL 4442796 (E.D.N.Y. Sept. 25, 2012) ............................................. 4

*In re Apple Data Priv. Litig.*,
   No. 5:22-cv-07069, 2026 WL 146025 (N.D. Cal. Jan. 20, 2026) ............................................. 9

*In re Facebook, Inc. Internet Tracking Litig.,*
   956 F.3d 589 (9th Cir. 2020) ................................................................................................. 3

*In re Meta Pixel Tax Filing Cases*,
   793 F. Supp. 3d 1147 (N.D. Cal. Aug. 5, 2025) ..................................................................... 7

*Larkin v. Workers' Comp. Appeals Bd.*,
   62 Cal. 4th 152 (2015) ......................................................................................................... 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).............................................................................................................. 2

*McMorris v. Carlos Lopez & Assocs., LLC,*
    995 F.3d 295 (2d Cir. 2021) ................................................................................................. 4

*Mills v. Saks.com LLC*,
   No. 23 CIV. 10638, 2025 WL 34828 (S.D.N.Y. Jan. 6, 2025)................................................... 3

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-CV-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)............................................. 7

*Mount v. PulsePoint, Inc.,*
684 F. App'x 32 (2d Cir. 2017) ................................................................................................. 3

*Murthy v. Missouri*,
603 U.S. 43 (2024)..................................................................................................................... 5

*Schallert v. Palo Alto Networks, Inc.*,
No. 25-ST-CV-17109 (Cal. Super. Ct. Mar. 6, 2026) ................................................................ 8

*See Aponte v. Ne. Radiology, P.C.,*
No. 21 CV 5883, 2022 WL 1556043 (S.D.N.Y. May 16, 2022)................................................ 4

*Simon v. E. Ky. Welfare Rights Ord.,*
426 U.S. 26 (1976)..................................................................................................................... 5

*St. Pierre v. Dyer,*
208 F.3d 394 (2d Cir. 2000) ...................................................................................................... 5

*United States v. Fernandez,*
516 F. App'x 34 (2d Cir. 2013)................................................................................................. 2

*Whalen v. Michaels Stores, Inc.,*
689 F. App'x 89 (2d Cir. 2017)................................................................................................. 4

**STATUTES**

Cal. Civ. Code § 1798.100................................................................................................... 9, 10

Cal. Civ. Code § 1798.140....................................................................................................... 9

Cal. Penal Code § 629.51.................................................................................................. 6, 7, 8

Cal. Penal Code § 638.50.................................................................................................... 8, 10

Cal. Penal Code § 638.51.................................................................................................. passim

Cal. Penal Code § 638.52....................................................................................................... 8

**PRELIMINARY STATEMENT**

In her First Amended Complaint ("FAC"), Plaintiff Jane Heiting flip-flops between incompatible factual allegations. Now, she alleges that it is "obvious" and "straightforward" that the collection of "non-personal data points" violates a telephone privacy statute that requires identification. Opp. at 7, 16. There is nothing straightforward about this. It is a manipulation of a statute to reach technology it was not drafted to include to weaponize it against innocent actors like Defendant Korangy Publishing Inc., publisher of *The Real Deal* ("TRD"). Even if some courts have found CIPA's language could stretch in other instances, it cannot be stretched *here* because Heiting alleges facts that categorically fall outside the statute's plain language.

In her opposition ("Opp."), Heiting shifts focus to the speculative actions of Data Brokers tracking her third-party website visits, but fares no better in meeting her Article III standing burden. Heiting, an experienced CIPA tester plaintiff,[1] is still unsure as to whether she alleges she was "ushered" into a tracking "regime" or whether her visit to the website "enhanced" an *existing* profile through which she *was already* tracked *by Data Brokers* or whether Defendant's collection of her "non-personal data" is itself an intrusion upon seclusion or whether it was non-party Data Brokers that intruded on her and TRD's singular "communication[.]" Opp. at 10-11, 15-16. But through this rambling, Heiting concedes that the information allegedly captured by TRD is not "private," "personally identifying," or a "private conversation."[2] Her speculation that

---

[1] Tauler Smith's mother-daughter CIPA tester plaintiffs **Jane _and_ Anne Heiting** have collectively commenced an incredible quantity of actions similar to this. *See* Def. Br., at n. 10; *see also, e.g., Jane Heiting v. Powerfleet, Inc.,* No. 2:26-CV-02768-MCS-MAR, 2026 WL 1859326 (C.D. Cal. June 12, 2026); *Jane Heiting v. Wistia, Inc.,* No. 25STCV25831 (Cal. Super. Ct. L.A. 2025); *Jane Heiting v. IHOP Restaurants, LLC* (Cal. Sup. 24STCV14453, Oct. 28, 2024); *Jane Heiting v. Commvault Systems, Inc. et al,* 2:25CV09526 (C.D. Cal. 2025); *Heiting v. Wildflower Brands, LLC,* No. 25STCV18507 (Super. Ct. L.A. County, 2026). Courts have also recognized in other contexts that Tauler Smith's serial litigation programs raise concerns. *See In re Outlaw Lab'ys, LP Litig.,* 2023 WL 5004484 (S.D. Cal.) (finding Plaintiff's attorneys Tauler Smith liable under RICO for a scheme to shake down settlements).
[2] *See* Opp. at 16 ("**[e]xtensive** tracking of individuals' browsing activity is almost certain to **entail** private, confidential and possibly embarrassing information."); *Id.* at 14 (arguing that "no allegation" is needed that "personally identifying data" or "private information" was captured); *but see* FAC ¶ 23 ("Defendant … intentionally

1

third parties allegedly used this single bundle of innocuous information to spark a grand-identifying scheme does not establish that Heiting has standing or a plausible claim for relief.

Heiting's Opposition lays bare the hysteria she drums up over online targeted advertising. The practice of serving ads to certain demographic groups is ubiquitous. It does not, however, identify individuals, as required under CIPA to justify the $5,000 fine *per violation*. Tellingly, Heiting and her serial litigation counsel never try their racket under the statute that actually regulates online consumer privacy, the California Consumer Privacy Act (CCPA). One court has already gotten to the bottom of why—it's "about the money." *Infra* Sect. II. The CCPA, which protects *more consumer information*, only provides $750 per violation. *Id.*

Moreover, Heiting does not play by her own rules. If CIPA can be stretched to encompass digital data collection—which TRD maintains it cannot—Heiting cannot then confine its language to the application she prefers. She cannot ignore the rest of the statute's language, which defeats her claim: i.e., the requisite telephone line court order, and the exclusion of stored content and tracking devices. These specifics remove this action from CIPA's reach. The motion to dismiss must be granted with prejudice, as the Court has made clear that no further repleading will be allowed.[3]

## I.     HEITING LACKS ARTICLE III STANDING.

Heiting fails to show the three essential elements of constitutional standing: an injury-in-fact, traceability, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Her Opposition now impermissibly editorializes precedent to gamble standing out of the ether. *See United States v. Fernandez,* 516 F. App'x 34, 36 (2d Cir. 2013) ("[Counsel] used his

---

intruded into a **private** conversation"); FAC ¶ 4 ("data that reasonably likely **identified** [Heiting] was transmitted[.]").
[3] 5/21/26 Order, Dkt 12 ("This will be Plaintiff's last opportunity to amend[.]").

editorial license to misrepresent our previous holding; he should refrain from doing so in the future.").

Heiting cites *Facebook* to analogize her allegations to those the Ninth Circuit deemed sufficient to warrant standing. Opp. at 13-14, 16. In *Facebook*, defendant Facebook tracked *its own* users' activity on third-party websites, compiled activity profiles using their *personal* Facebook profile data, *and* sold these profiles to third parties. *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 596 (9th Cir. 2020). Heiting only alleges that TRD collected her "non-personal" information using Data Broker software *one time* and that any injury has been caused by third-party Data Brokers. FAC ¶18. This is not analogous to *Facebook*'s finding.

Next, Heiting repeatedly revisits *PulsePoint* to propose that an alleged "intrusion" into her non-personal, non-identifying data is sufficiently analogous to the tort of intrusion upon seclusion simply because "identifying" is not a black-letter tort element. Opp. at 13-17 (citing *Mount v. PulsePoint, Inc.,* 684 F. App'x 32 (2d Cir. 2017), *as amended* (May 3, 2017)). Although she contemporaneously seems to recognize the opposite: "The FAC *does not allege* that the dissemination of such seemingly *non-personal data alone represents an injury in fact*." *Id.* at 15. But regardless of this scattershot approach, this tort is still "aimed at invasions of privacy that are an investigation or examination into private concerns" that are "substantial." *Mills v. Saks.com LLC*, No. 23 CIV. 10638, 2025 WL 34828, at *5 (S.D.N.Y. Jan. 6, 2025). And in this data context, a lack of intrusion into *"substantial" information* is no intrusion at all. *Id.*

*PulsePoint* does not rewrite this traditional head of harm—as Heiting suggests. In *PulsePoint,* the *Defendant* used technology to *bypass* the privacy protections *built into* the user's browser and access their browsing history *without authorization*. *PulsePoint,* 684 F. App'x 32, 34. In this clearly "offensive" circumstance, indeed, the Second Circuit was able to find a

3

sufficient *analogue* to warrant standing (albeit not enough to state a claim). *Id.* Heiting's allegations lack this factual payload. *See Aponte v. Ne. Radiology, P.C.,* No. 21 CV 5883, 2022 WL 1556043, at *5 (S.D.N.Y. May 16, 2022) (citing *PulsePoint* in holding that data intrusions by third parties are not a "close historical or common-law analogue" to intrusion upon seclusion). In fact, Heiting would need to have "trackers" (cookies) enabled on her browser to "allow" Data Brokers to execute this alleged scheme. Opp. at 15, 24. And, clearly, allowing cookies is in Heiting's interest. *See supra* n. 1.

Regardless, Heiting cannot show an injury in fact by relying on conclusory, speculative allegations of injury attributable to third parties. As she concedes, her hypothetical privacy harm could only be propagated by Data Brokers, not TRD. Opp. at 15-16. This requires a "highly attenuated chain of possibilities[.]" *Whalen v. Michaels Stores, Inc.,* 689 F. App'x 89, 90 (2d Cir. 2017) (citing *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 410 (2013)); *see also McMorris v. Carlos Lopez & Assocs., LLC,* 995 F.3d 295, 299 (2d Cir. 2021) ("[P]laintiffs failed to allege a substantial risk of identity theft or that such harm was certainly impending"). And "[a]s the jurisprudence of the Supreme Court and Second Circuit has clearly articulated, claims of harm based upon speculation regarding decisions by third parties is insufficient to confer Article III standing." *Himber v. Intuit, Inc.*, No. 10-CV-2511, 2012 WL 4442796, at *7 (E.D.N.Y. Sept. 25, 2012); *see also Cooper v. Slice Techs., Inc.,* No. 17-CV-7102, 2018 WL 2727888, at *2 (S.D.N.Y. June 6, 2018) ("[t]he risk that third-party buyers might deanonymize users' data…when it comes to standing…is too remote."). Heiting fails to "establish a 'material risk of future harm" which is "sufficiently imminent and substantial." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68 (2nd Cir. 2022).

4

This "speculation" also breaks the causal chain. *Clapper*, 568 U.S. at 414. Construing TRD's alleged collection of a single visitor's "non-personal data points" into a plausible claim that it "directed and controlled" almost *twenty* data brokers to gather information on Heiting as part of a "surveillance scheme" against a one website visitor is a *non sequitur* of conspiratorial scale. FAC ¶¶ 11–12, 28. Heiting only offers "self-inflicted harm," which cannot be used to manufacture standing. *See St. Pierre v. Dyer,* 208 F.3d 394, 401 (2d Cir. 2000). This Court cannot redress injuries not traceable to TRD's actions. *See Simon v. E. Ky. Welfare Rights Ord.,* 426 U.S. 26, 27 (1976). Moreover, if, as Heiting alleges, Data Brokers already have a "profile" of her, relief cannot "redress or prevent [the] actual or imminently threatened injury." *See Murthy v. Missouri*, 603 U.S. 43, 56 (2024).

## II.     THE FAC FAILS TO STATE A CLAIM UNDER CIPA § 638.51.

Presumably because Plaintiff's counsel has been bringing identical claims in numerous jurisdictions, on behalf of this tester Plaintiff, her relatives,[4] and others, its Opposition addresses arguments TRD did not make in its motion. TRD did not cite or argue the Electronic Communications Privacy Act, nor did TRD address Heiting's allegations that TRD's website is a "tracking device." Opp. at 17.

In response to Heiting's *new* argument that "there is no allegation of a tracking device," Opp., 18, her FAC does, in fact, repeatedly allege that TRD's website is a tracking device. FAC ¶3 ("track their internet browsing on an ongoing basis"); ¶12 ("track California residents"); ¶17 ("Website is designed to track [] visitors"); ¶21 ("track the visitors"); ¶26 (tracking[] website visitors"); ¶38 ("cross-site tracking of users"); ¶41 ("single user could be tracked…across news

---

[4] *See Anne Heiting et al. v. HarperCollins Publishers LLC et al.*, No. 23STCV10382 (May 15, 2025) (CIPA claim by Plaintiff's daughter, wherein Anne Heiting admits to being a CIPA website "tester" who had "extensive experience" on the website such that she lacked an objectively reasonable expectation in the privacy of her website conduct).

5

sites, blogs, e-commerce, etc."); ¶45 ("using third-party tracking software"); ¶54 ("visitor …subsequent tracking alleged herein"); ¶56 ("ongoing tracking of individuals' internet browsing"); ¶60 ("for…tracking purposes"); ¶78 ("track on an ongoing basis Plaintiff"); ¶79 ("tracking technology…on the Website"); ¶80 ("tracked on an ongoing basis"); ¶82 ("visiting the Website that facilitates ongoing tracking of them").

This is relevant because the definition of "electronic communication" states that it "***does not include…any communication from a tracking device***." § 638.51(a)(2)(C) (emphasis added). Heiting alleges the "'electronic communication' at issue in this case is the communication between the devices of Plaintiff…on the one hand, and the Website, an instrumentality of Defendant, on the other hand." FAC ¶67. Yet she repeatedly characterizes TRD's website as a "tracking device." The consequence is that Heiting's alleged "electronic communication" at issue is thus one "from a tracking device," i.e., TRD's website, and "electronic communication" "does not include…any communication from a tracking device." § 638.51(a)(2)(C).

Next, Heiting argues that a tracking device is defined "in the way the term is popularly used, in other words, a device that tracks physical movements." Opp., 18. That is not so. A "tracking device" is defined as "an electronic or mechanical device that permits the tracking of the movement of a person or object." Cal. Penal Code § 629.51(a)(3). It is not tied to physical movement, nor is that necessarily the "popular" use, given Heiting's repeated reference to electronic tracking of her movements "across news sites, blogs, [and] e-commerce." FAC ¶41.

The FAC relies on repeated use of buzzwords like "browser fingerprinting" or "unique identifier," which appear nowhere in the statute, while asking the Court to ignore the statutory language that forecloses her theory. FAC ¶ 26, 54. Now, she changes her tune, arguing that CIPA's language is "broad" and neutral, Opp., 19, and, simultaneously, that a "tracking device"

6

must be defined "the way the term is popularly used" and limited to "physical movement." Opp. at 18. All the while, the FAC pleads an "electronic communication" with a website that is allegedly "tracking" her. *Supra* at 5-6. But an "electronic communication" with a "tracking device" is not within a trap and trace, § 629.51(a)(2)(C), therefore, the FAC must be dismissed.

Second, Heiting argues that while the FAC did allege Data Brokers have access to stored content on "millions of Americans" and do "match incoming data about individuals with stored data," she now alleges that the "identification of visitors" does not "***require*** resort to any stored data." Opp., 18. However, if you strip away the FAC's allegations of "match[ing] incoming data about individuals with stored data" to just the data *gleaned by Defendant from a single website visit*—data that Heiting admits "website operations require…to render the contents of a webpage"—nothing is left to support Heiting's theory that she is identifiable by TRD. FAC ¶¶19-21. All Heiting has alleged is: (1) she visited TRD's website once on March 11, 2025; and (2) TRD gathered "non-personal data" about her visit like "the size of her screen, her device's brand name and her browser settings[.]" *Id*. ¶18. Her conclusory allegation that she is "reasonably likely to be identified" by "non-personal data points" fails to state a claim. *Id*. ¶20.

Heiting cites no authority for her proposition that a single website visit could be the trigger that kicks off the requisite identification through an alleged web of other websites, third parties and other downstream conduct. Many of Heiting's cases are pen register claims under § 638.51, not trap and trace claims. *See e.g. Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745 (N.D. Cal. Sept. 2, 2025) (pen register); *Deivaprakash v. Condé Nast Digit.*, 798 F. Supp. 3d 1100 (N.D. Cal. 2025) (pen register); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (pen register); *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153–54 (N.D. Cal. Aug. 5, 2025) (pen

7

register). It is not relevant whether another court has found that different allegations can be a *pen register*, because a pen register is not required to "identify" the person. *See* § 638.50(b) ("records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication.").

Realizing that her theory does, indeed, require leveraging "stored content" to bootstrap its way to purported identification, Heiting shifts to say that even if the FAC did rely on "stored content," the statute does not foreclose "trap and trace devices that at some point involve review of stored data in addition to currently received data." Opp., 18. That is not supported by the text. The chapter defining "electronic communication" provides that it "applies to the interception of wire and electronic communication" and "does not apply to stored communications or stored content." § 629.51(b). Heiting has alleged one "electronic communication" on March 11, 2025. FAC ¶16. She cannot leverage "extensive external records" third parties "already ha[ve]," *id*. ¶3, to "identify" Heiting as "the source" of that "electronic communication."

Nor should this Court ignore the split of authority that continues over § 638.51's applicability to this technology at all. Many California state courts have found that when §§ 638.51 and 638.52 are properly "[c]onstrued together," the warrant provision "limits the scope" of § 638.51 "to telephone lines." *See, e.g., Schallert v. Palo Alto Networks, Inc.*, No. 25-ST-CV-17109 (Cal. Super. Ct. Mar. 6, 2026) (sustaining demurrer without leave to amend CIPA § 638.51 claim alleging "software development kit" on website based on review of statutory language and legislative history showing "CIPA does not extend to website communications[.]").

As one federal court noted on this split, "the question of whether [§ 638.51] applies outside of the telephone context is a close call[.]" *In re Apple Data Priv. Litig.*, No. 5:22-cv-

07069, 2026 WL 146025, at *4 (N.D. Cal. Jan. 20, 2026). While Heiting relies on cases that ignore the telephone court order provision, "recent decisions from California state courts have agreed" that the statute must be read "in light of the statutory scheme," which contains "explicit[] reference" to "collecting information from telephones[.]" *Id.; see also Larkin v. Workers' Comp. Appeals Bd.*, 62 Cal. 4th 152, 157–58 (2015) (California law on statutory interpretation requires consideration of "the text of related provisions, terms used in other parts of the statute, and the structure of the statutory scheme.").

Heiting's supposed temporal distinction between the CCPA regulating "<u>after</u> the data is collected" and CIPA governing data "acquisition…<u>in the first instance</u>" is made up. Opp., 25. The statutory language of CCPA specifically provides that "a business that controls the collection of a consumer's personal information shall, ***at or before the point of collection***, inform consumers" of their rights, including the categories of information collected, the purpose of that collection, and whether that information is sold or shared. California Consumer Privacy Act of 2018 (CCPA), Cal. Civ. Code § 1798.100 ("General Duties of Businesses that Collect Personal Information").

Moreover, the CCPA is the more protective consumer privacy statute; it does not "curtail" CIPA. Opp., 25. The CCPA defines "personal information" to include information that "identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or directly, with a particular consumer or household." Cal. Civ. Code § 1798.140. This definition explicitly encompasses IP addresses, online identifiers, browsing history, search history, interactions with a website or online ad, and geolocation data, in addition to a broad range of communication contents, behavioral data, inferences and sensitive personal information. *Id.* In contrast, § 638.51 only covers non-content routing data, addressing

9

and signaling information. Cal. Penal Code § 638.50. Applying the CCPA to Heiting's allegations would, in fact, be "the law that affords the greatest protection for the right of privacy for consumers," and therefore, it "shall control." Cal. Civ. Code § 1798.175.

The cases Heiting cites do not find otherwise. *Brooks* analyzed whether California's Unfair Competition Law conflicted with the CCPA, finding that the sale of data could still constitute unfair competition and saying nothing about § 638.51. *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418, 2021 U.S. Dist. LEXIS 154093 (N.D. Cal. Aug. 16, 2021). *Mirmalek* did not review the text of the CCPA and compare its definitions with CIPA to actually analyze which statute was more protective, or whether they could be harmonized on normative grounds. *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024).

Why then, as the Ninth Circuit recently pondered, do plaintiffs insist on gambling for a new interpretation of CIPA when they are "not without recourse, thanks to the California Consumer Privacy Act of 2018 (CCPA)[?]" *Gutierrez v. Converse Inc*., No. 24-4797, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (dismissing a case by Heiting's law firm, Tauler Smith, because CIPA's wiretap provision does not apply to internet data collection) (Bybee, J., concurring). "It may be about the money[.]" *Id*. "CIPA allows plaintiffs to recover $5,000 per violation, compared to just $750 per violation under the CCPA." *Id*. That could mean "the difference in total recovery" in the "millions of dollars," *id*., which is certainly an outcome Heiting and her repeat counsel, Tauler Smith, dangle over defendants to extract settlements.

## CONCLUSION

Defendant respectfully requests this Court dismiss the FAC with prejudice and grant such other relief as the Court deems just and proper.

10

Dated: July 9, 2026

Respectfully submitted,

By: */s/ Gillian Vernick*

Gillian Vernick
David S. Korzenik
MILLER KORZENIK RAYMAN LLP
1501 Broadway, Suite 2015
New York, NY 10036
212-752-9200
gvernick@mkslex.com

11